**UNITED STATES of America**
**v.**
**Steve PUCO, Defendant.**
**No. 71 Cr. 279.**

United States District Court,
S. D. New York.

Jan. 27, 1972.

Whitney North Seymour, Jr., U. S. Atty. by John H. Gross, Asst. U. S. Atty., New York City, for the United States.

Jay Goldberg, New York City, for defendant.

LASKER, District Judge.

Following conviction in a non-jury trial for selling narcotics and conspiring to do so, defendant has moved (a) pursuant to Rule 33, F.R.Crim.P., to vacate the verdict, authorize the taking of new evidence, and direct "entry of a not guilty verdict on the ground of newly discovered evidence," and (b) in the alternative, for a new trial on the ground that the government breached its duty of disclosure when it failed to inform the defense of evidence indicating the unreliability of a government witness. The government opposes both motions.

### (a) The Rule 33 Motion

The critical question at trial was whether or not the defendant attended a meeting on January 11, 1970, with the government's chief witness, Michael Fiore, at which the defendant agreed to procure narcotics. Puco's sole defense was an alibi. He claimed that on the night of January 11, 1970, he was in Baltimore, Maryland, at Louise's Restaurant, and he produced a number of witnesses who testified in support of that claim, although not all of them were able specifically to state that he was at Louise's actually on the evening of January 11th. The present motion offers further testimony to corroborate the alibi. The excuse for not producing

these witnesses at trial is that defendant did not know until the first day of the trial that the government would claim that Puco attended a conspiratorial meeting on January 11th and the defendant could not marshal his witnesses in anticipation of such evidence.

■ The criteria for determination of a motion for a new trial have been ably stated in United States v. Fassoulis, 203 F.Supp. 114, 117 (S.D.N.Y.1962). A motion for a new trial may not be granted unless the court is "satisfied that the evidence (1) is in fact newly discovered, i. e., discovered since the trial; (2) could not with due diligence have been discovered earlier; (3) is not merely cumulative or impeaching; (4) is material to the issues, and finally, (5) is such, and of such nature, that upon a retrial it will probably produce an acquittal."

In Brown v. United States, 333 F.2d 723, 724 (2d Cir. 1964), a case strikingly similar to the instant case, the Court of Appeals of this Circuit rejected the application for a new trial. There, as here, the defense was an alibi and the motion sought to produce further witnesses in support of the alibi. The Court of Appeals said:

> "The unlawful sale of which Brown was convicted allegedly occurred between 8:30 and 9:00 P.M., on the evening of July 29, 1960, in Hartford, Connecticut. Brown's 'newly discovered evidence,' consisting primarily of the testimony of one Les Chant, was apparently intended to establish that the appellant had not, in fact, been in Hartford on the evening in question, but instead had been with Chant in Springfield, Massachusetts, listening to the radio broadcast of a baseball game.

> "As Judge Anderson noted, Brown has never explained to the Court's satisfaction why Chant, the clerk of the Springfield hotel in which the appellant resided at the time, was not called at the trial. We wholly concur in the trial judge's conclusion that the

exercise of due diligence has not been established."

■ In the instant case, defendant proposes to produce four witnesses to further establish his defense that he was not in New York on the evening of a conspiratorial meeting to arrange the cocaine sale for which he was convicted, but was in Baltimore, Maryland.

Defendant offers first that Clem Florio, a turf analyst and boxing editor for the Baltimore News American, would testify that he was with defendant during the afternoon of January 11th, but has no knowledge of his whereabouts on the evening of the 11th. Defendant's case included testimony that he was present in Baltimore during the day of January 11th, and thus this offer of proof would be merely cumulative and irrelevant, or, at most, of marginal relevance to fixing where defendant was on the night in question.

Next, defendant offers to call Elizabeth Worthington, a former waitress at Louise's Restaurant, where defendant claims he had dinner on the evening involved. In an affidavit she states: "On Monday Jan 11 I worked from 5–12 at the restaurant. I remember Mr. Puco being in the Restaurant that evening and him saying he was leaving in the morning, so I went over and gave him a farewell kiss." (Affidavit of Elizabeth Paule Worthington, sworn to August 11, 1971). This statement, and the balance of the affidavit from which it is taken, are in substance the same as made by defendant's witness Gloria Hicks, a cook at Louise's Restaurant, who testified that she remembered defendant being in the restaurant "all day and all night" on January 11th. Although this evidence is cumulative, it would carry some weight if considered alone in a situation where inconsistent testimony and credibility are at issue. January 11 is the key date here, and this witness does appear to offer valuable testimony, however repetitive it may be of that already in the record. Nonetheless, there is no showing that this testimony could not have been discovered and adduced earlier in

the exercise of due diligence. No recess to permit defendant to locate and bring this witness to the trial was requested, and since her affidavit indicates that she spent a fair amount of time with defendant during his stay in Baltimore prior to the evening in question, it seems unlikely that he would have forgotten her presence and the utility of her testimony to his defense.

Defendant's third offer of new evidence is the testimony of Ralph De Felice, a Philadelphia resident and friend of Joe Di Natale. His affidavit states: "I had dinner with Mr. Puco at Louise's on Sunday Jan 10th and Monday evening Jan 11th," (signed and affirmed August 11, 1971). This evidence suffers from the same deficiency as that of Elizabeth Worthington; it could have been discovered prior to—or during—trial, and as to the alibi it is cumulative. Moreover, the affidavit conflicts with trial testimony of defendant's witness Joe Di Natale, who testified that while De Felice was at dinner at the restaurant on the 10th he was not present on the 11th.

Finally, defendant offers the testimony of Rebecca Fine, a waitress at Louise's Restaurant. Her affidavit (signed and affirmed August 11, 1971) states: "I waited on Mr. Puco and served him meals for a four or five day period during the time Mr. De Natale's horses ran and for several days after. All this was during the second week in January 1971." This, like the offer of evidence of Florio, is cumulative, could have been discovered with due diligence, and is irrelevant or of marginal relevance to determination of where the defendant was on the evening of January 11th.

■ "It is well settled that motions for new trials are not favored and should be granted only with great caution." United States v. Costello, 255 F. 2d 876, 879 (2d Cir. 1958). Defendant has contended that he was in Baltimore during the evening of January 11th, and yet at trial called none of the witnesses he now proposes to present. Even if the affidavits of the proposed witnesses are to be believed, the defendant must have known at the time of trial of their presence with him in Maryland on the critical "alibi night" of January 11th. There is no showing that they were unavailable to defendant before or during the trial. "Yet the defense never sought to subpoena [them] or to have the goverment produce [them], or to have the case adjourned until [they] could be located." United States v. Lanza, 329 F. 2d 422, 423 (2d Cir. 1964). The fact that some of these "new" witnesses state that they did not know their information was of value to defendant until after his trial is immaterial, for it is not what the witness knows, but what defendant knows about the witnesses which determines whether material evidence could have been discovered with due diligence before or during trial.

Moreover, even if the offers of proof were uniformly material, undiscoverable before trial and not merely cumulative, defendant would fail by the key test, which requires that the evidence "is such, and of such nature, that upon a retrial it will probably produce an acquittal." United States v. Fassoulis, supra. Only the affidavits of De Felice and Worthington could be considered to add anything to the weight of defendant's evidence were they to be admitted. However, the proposed testimony of De Felice has already been contradicted by the testimony of defendant's own witness, Di Natale, to the effect that De Felice was not present at Louise's Restaurant on January 11th. Worthington's testimony might be more important, but, as indicated above, is basically cumulative of that of Gloria Hicks.

But the proposed testimony must be weighed in the total setting of the trial, which includes the astonishing fact that, although all the defense witnesses stated that defendant's son, Steve Puco, Jr., was with him and them at Louise's Restaurant on January 11th, and although Puco Jr. was present in the courtroom throughout the trial (and identified from the witness stand as the defend-

ant's son by Maurice Jacobs in the first instance and other defense witnesses thereafter), he was never called to testify as an alibi witness in support of his own father. It is a reasonable inference that if he had been called he would not have corroborated the story of the other defense witnesses.

The burden of satisfying the requirements of Rule 33 is on the defendant, and he has failed to meet that burden. There is no reason to believe that in this judge-tried case the holding of a hearing could clarify or alter this conclusion. Even taking the facts as here alleged, a new trial would not be warranted. *Cf.* United States v. Comulada, 340 F.2d 449, note 3 at 452 (2d Cir. 1965). Accordingly, defendant's motion under Rule 33 is denied.

### (b) The "Brady" Motion

 Defendant's alternative motion must also be denied. He alleges that a key government witness, Michael Fiore, had been untruthful in other information he had given to the government, that therefore he might have been untruthful in stating that he met with defendant on the evening of January 11th, and that the government failed to inform defendant of Fiore's prior instances of untruthfulness.

Of course, under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963), the government is always obliged to furnish the defendant with exculpatory information, including material which may impeach the credibility of a government witness. Here, however, there is no basis for believing that the government failed to meet that obligation.

The only ground defendant has for his assertion that Fiore was untruthful is the fact that in another case where Fiore was an informant an indictment alleging sale of narcotics was dismissed on motion of the government. Defendant Puco's counsel concludes, on information and belief, that the dismissal was because the defendant was misidentified by Fiore. (Affidavit of Jay Gold-

berg, sworn to September 9, 1971). This speculation by defense counsel is refuted by the affidavit of the Assistant United States Attorney here. He states that he was informed by the responsible government attorney who authorized dismissal of the indictment that such dismissal was sought "for a reason other than the one speculated on by Mr. Goldberg . . . . I did not at the time of trial and do not now know of any false statements made by Michael Fiore. I did not at the time of trial and do not now know of any evidence which would exculpate Steve Puco." (Affidavit of John H. Gross, sworn to December 20, 1971).

Assuming these facts as alleged, misidentification cannot be equated with untruthfulness. However that may be, from the positiveness of the affidavit of the Assistant United States Attorney it is clear that defense counsel's conjecture is unfounded and does not justify any action by the court.

The motions are denied.

It is so ordered.