**UNITED STATES of America,**

v.

**Libertad CRUZ, a/k/a "Libby," a/k/a "Levy," Defendant.**

**S 83 Cr. 657 (SWK).**

United States District Court,
S.D. New York.

Feb. 21, 1985.

Rudolph W. Giuliani, U.S. Atty. for the Southern District of New York, by Neil S. Cartusciello, Asst. U.S. Atty., New York City, for the U.S.

Francis M. DeCaro, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The above-captioned action is before this Court upon defendant's motion for a new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure. For the reasons stated below, the motion is denied.

### –BACKGROUND–

Defendant Libertad Cruz was named in a six-count superseding indictment charging him with the following: 1) conspiracy to distribute, and to possess with intent to distribute, heroin and cocaine; 2) engaging in a continuing criminal enterprise; 3) three counts of distributing heroin; and 4) carrying a firearm during the commission of a felony.

The Government's proof at trial consisted primarily of the testimony of one key witness, Wilfredo Rodriguez. Rodriguez, on three occasions during 1982, had sold quantities of heroin to an undercover agent of the Drug Enforcement Agency ("DEA"). Rodriguez was arrested after the third sale, and pled guilty to one count of distributing heroin. After his conviction and sentencing, Rodriguez decided to cooperate with the Government.

At trial, Rodriguez testified that he had obtained the heroin that he sold to the DEA agent from Cruz, and that he had turned over most of the money received from those sales to Cruz. Rodriguez further testified about a heroin and cocaine business run by Cruz out of an apartment in one of his buildings in the Bronx. Rodriguez described this business in great detail.

According to Rodriguez, each morning (Monday through Saturday) from about May through August 25, 1982, Cruz brought large quantities of high purity heroin and cocaine to Apartment 2E at 54 Featherbed Lane in the Bronx. There Rodriguez, along with Jose Marquez and Abraham Reyes (the fugitive defendants), cut and packaged the drugs in small glassine envelopes or "dime bags", approximately 800 each of heroin and cocaine. The en-

velopes were stamped with brand names—"Goya" for the heroin, and "Two-Way" for the cocaine. The envelopes were then divided between Rodriguez and Reyes, who delivered them to two selling points on the street: Rodriguez delivered his half to a man named Jose at 143rd Street and Willis Avenue; Reyes delivered his half to a man at 179th Street and Anthony Avenue. Each afternoon, Rodriguez and Reyes would collect the money from the selling points and bring it back to Marquez. Marquez would give the money to Cruz.

Rodriguez further testified that Cruz carried a pistol when he delivered the drugs to apartment 2E. Rodriguez identified a gun seized at Cruz's apartment at the time of his arrest as the pistol he had carried when he delivered drugs to apartment 2E.

In addition to this five-man operation, Rodriguez testified that Cruz was a supplier of heroin to at least one other person, one Carlos Rivera-Gonzalez. Rodriguez indicated that Gonzalez purchased approximately seven to eight ounces of uncut heroin every seven to ten days.

The Government introduced further evidence of Cruz's drug dealings. Several pages of handwritten records were seized from one of Cruz's apartments. DEA agents, based on their experience as narcotics agents, testified that these records reflected drug transactions. This opinion was based in part, on the price shown in the records (then, the going rate for heroin in quantity on the street) and the distinction of quantities as "brown" or "white" (two types of heroin). The agents testimony was highly credible. On the other hand, Anna Rodriguez's testimony that these documents were records of purchases of different grades of heating oil was not credible. It appears from these records that Cruz was distributing heroin to at least three other individuals—Richie, Pedro, and Skippy.

As further evidence of Cruz's drug dealing, the Government presented the testimony of Raj Tuli. Tuli, a citizen of India, had been arrested on July 5, 1983, at Kennedy Airport attempting to import approximately 1.75 kilograms of heroin. He pled guilty to possession of heroin, and agreed to cooperate with the Government. Tuli was incarcerated at the Metropolitan Correction Center ("MCC") awaiting sentence. Tuli testified that he met one Jose Mojica in late July, 1983, and discussed with him a plan to import heroin from India. Mojica was arrested on October 21, 1983, on unrelated drug charges. Tuli testified that after Mojica was arrested, he introduced him to Cruz, who was also incarcerated at the MCC, and stated that Cruz was "like a father" to him. Tuli further testified that those three (Cruz, Mojica, and Tuli) had several conversations in the MCC during which plans were made to import heroin from India. Tuli was cross-examined extensively about his conviction for possession of heroin and his cooperation agreement. Tuli was also cross-examined at length about the alleged conversations and plans to which Cruz was a party. Tuli admitted that the plans never got off the ground, but he maintained that they had been made, and that Cruz had been a party to them.

Cruz testified on his own behalf. He admitted that Mojica is one of his friends, and that Mojica had introduced him to Tuli at the MCC. Cruz further testified that Mojica calls him "Viejo," or old man, which he loosely translated as "father," and that Mojica might have referred to him as "like a father" when introducing him to Tuli. Cruz denied, however, having any conversations with Tuli and Mojica regarding the importation of heroin; rather, he testified, they only talked "normally." Cruz testified that Tuli had approached him, out of Mojica's presence, to suggest a scheme to import heroin.

Neither party called Mojica to testify at the trial. After a lengthy jury trial, Cruz was convicted on all six counts. The Court scheduled Cruz's sentencing for June 20, 1984.

On June 20th, the Government apprised the Court of new information it had acquired. The Court adjourned the sentenc-

ing to allow the Government to investigate this new information and to determine how to handle this potential problem.

This new information, as it unfolded, involved Mojica's statements regarding the tripartite conversations allegedly conducted at the MCC. In late May or early June, 1984, Mojica decided to plead to his charges and to cooperate with the Government. (Affidavit of Neil S. Cartusciello, dated October 15, 1984 ("Cartusciello Aff."), ¶ 10.) During debriefing, Mojica acknowledged that Cruz was "like a father to him," and that he had introduced Cruz to Tuli using that expression. (*Id.*, ¶ 11a.) Mojica also admitted that he had met with Tuli prior to his arrest to discuss a plan to import heroin from India. (*Id.*) Mojica, however, denied having conversations after his arrest to plan such importation, with or without Cruz, and disclaimed any knowledge of such conversations between Cruz and Tuli. (*Id.*) Mojica also acknowledged that he was aware of Cruz' narcotics dealings with the fugitive defendants Marquez and Reyes. (*Id.*, ¶ 11b.) Mojica further stated that Cruz made incriminating statements to him while they were both in the MCC. In particular, Cruz remarked that the Government was coming down hard on him now for dealing on a relatively small basis by comparison to the light way they treated him when he was dealing on a larger scale years ago (*Id.*, ¶ 11c.), and that he suspected Marquez and Reyes had given information against him (*Id.*). Apparently, Mojica has since recanted some of these statements. (*Id.*, ¶ 12).

At the time of sentencing on July 6, 1984, defense counsel argued that Tuli had lied on the stand and moved to dismiss Count Two (the Continuing Criminal Enterprise count), or in the alternative for a new trial and for some form of discovery of Mojica's statements. The Court directed counsel to file such motions formally, which was done, and sentenced Cruz on the charges against him. That motion is now before the Court.

-DISCUSSION-

Defendant's motion, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, for a new trial is based on the grounds of newly discovered evidence. The alleged newly discovered evidence, presumably,[1] is Mojica's potential testimony on Cruz's behalf, and, derivatively, its weight in demonstrating the perjurious nature of Tuli's testimony.

■ It has long been the law in this Circuit that "motions for new trials are not favored and should be granted only with great caution." *United States v. Costello*, 255 F.2d 876, 879 (2d Cir.), *cert. denied*, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958). The long-standing test applied to such motions based on newly discovered evidence is clear. A new trial based on newly discovered evidence will be granted only if the following criteria are met: (1) the evidence must, indeed, be newly discovered, *i.e.*, discovered after trial; (2) the evidence must be such that it could not,

1. Cruz's motion papers are, to say the least, bareboned. The initial motion papers, quoted *in their entirety*, are as follows: "The defendant, by his attorney, FRANCIS DE CARO, now moves under Title 18 Rule 33 of the F.R.C.P. which was preserved, and respectfully requests that this Honorable Court vacate the Conviction and order a new trial. In support of said motion, the defendant will show the court the following: *I* A key witness for the Government, RAJ TULI, who testified as to certain conversation pertaining to the Defendant out of the presence of the Defendant and with another party (JOSE MOJICA) and allowed permissible under Rule 801(d)(2)(E) was perjurious. *II* These conversations have now been found to be perjurious as (JOSE MOJICA) denies such. *III* The

U.S. Attorney has stated that his witness may have *"lied." IV* It is now respectfully requested that this Honorable Court grant said motion as there is no question as to the gross prejudice to the Defendant and tainted the presentation to the Jury. WHEREFORE, premises considered, it is respectfully requested that this Honorable Court grant said motion or in the alternative, grant a hearing as to JOSE MOJICA who is in the M.C.C. and in Government Control. [sic passim]" (Emphasis in original). Defendant's reply papers are not significantly more substantial.

The Court has read these papers very liberally in order to give the defendant the benefit of any doubt in understanding the grounds for the motion and the legal support therefor.

with due diligence, have been discovered prior to or during trial; (3) the evidence must be material to the issue of guilt, and not merely for the purpose of impeaching other testimony; (4) the evidence must not be cumulative; and (5) the evidence must be such that it would probably lead to acquittal. *See, e.g., United States v. Alessi,* 638 F.2d 466, 479 (2d Cir.1980); *United States v. Stofsky,* 527 F.2d 237, 243 (2d Cir.1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976); *United States v. Slutsky,* 514 F.2d 1222, 1225 (2d Cir.1975); *Costello,* 255 F.2d. at 879; *see also, Berry v. State,* 10 Ga. 511, 527 (1851).

That test is applicable unless the failure of the defendant to discover the evidence sooner was due in some part to prosecutorial misconduct. *See United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *see also Stofsky,* 527 F.2d at 243–44. In such a case, a less demanding standard is applied. *Id.* Defendant, in this case, appears to be making vague assertions about such misconduct. The defendant asks, "why didn't the Government put Jose Mojica on the stand? He was in their control." This vague allegation is insufficient to warrant any inquiry into the propriety of the prosecutor's conduct. *See United States v. Gilbert,* 668 F.2d 94, 97 (2d Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982). The short answer to defendant's allegation is that Mojica was not in the Government's control. The fact that he was incarcerated at the MCC does not place him under the Government's control. Mojica was facing his own criminal charges and retained his array of constitutional rights including the right not to give self-incriminating testimony. The Government was under no obligation to call a witness who would refuse to testify because of his Fifth Amendment privilege. Moreover, the evidence shows that the Government exercised proper diligence in investigating the exact evidence at issue. The Government attempted to obtain Mojica's cooperation prior to Cruz's trial, but Mojica refused.

(Cartusciello Aff., ¶ 10.) Furthermore, upon obtaining Mojica's cooperation and learning of his proffered testimony, the Government advised the Court at its earliest opportunity. Certainly, the conduct of the prosecutor in this action has not been improper.

■ Defendant also seems to argue that the fact that Tuli's testimony was perjurious (or so defendant alleges) is conclusive of his right to a new trial. Many cases do apply a less stringent test in addressing motions for a new trial in case involving perjured testimony. *See, e.g., Larrison v. United States,* 24 F.2d 82, 87 (7th Cir. 1928); *see also Stofsky,* 527 F.2d at 245 n. 9 (listing cases); *United States v. Polisi,* 416 F.2d 573, 577 (2d Cir.1969). The law in this Circuit, however, is to the contrary: absent prosecutorial misconduct, motions for a new trial based on newly discovered evidence that perjurious testimony was received at trial are governed by the traditional *Berry* test. *See Stofsky,* 527 F.2d at 245–46; *see also United States v. Rosner,* 516 F.2d 269, 279 (2d Cir.1975), *cert. denied,* 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976); *United States v. Marquez,* 363 F.Supp. 802, 806 (S.D.N.Y.1973) (Weinfeld, J.), *aff'd on opinion below,* 490 F.2d 1383 (2d Cir.), *cert. denied,* 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974).

■ The burden of proving that the five requirements of the *Berry* test are met is on the defendant. *See United States v. Fassoulis,* 203 F.Supp. 114, 117 (S.D.N.Y. 1962) (J. Weinfeld). So tested, this motion must be denied.

1. Newly discovered evidence.

Cruz claims in his motion papers, apparently,[2] that two items of newly discovered evidence warrant a new trial. First, that Mojica would testify that he did not engage in conversations with Tuli and Cruz at the MCC devising a scheme to import heroin from India, thus corroborating Cruz's testimony in this regard. Second, that, based on this, Tuli's testimony was perjured. Es-

---

**2.** See footnote p. 828, above.

sentially, this is only one item of newly discovered evidence—Mojica's potential testimony—with its derivative impact on the credibility of Tuli's testimony.[3]

As to this one item, Mojica's proffered testimony, Cruz has shown that it was discovered after trial. Since it was the Government that discovered this evidence, in the course of its efforts to obtain Mojica's cooperation after Cruz's trial, and that then related it to the defendant and the Court, Cruz has shown that he learned of it after trial.

### 2. Defendant's diligence in obtaining this evidence.

By letter dated February 1, 1984, the Government advised defense counsel that it intended to prove that Jose Mojica was among the defendant's co-conspirators and among those as to whom Cruz occupied a supervisory position. By letter dated March 8, 1984, the Government advised defense counsel that it intended to prove "that the defendant continued to engage in heroin dealings during the time he was incarcerated in the Metropolitan Correctional Center immediately following his arrest ... [through] the testimony of a witness who was a prisoner at the time the defendant was also a prisoner." Thus, before trial began, defendant was aware of Mojica's importance to the case.

Furthermore, discussions on the morning trial commenced make clear that the defendant was aware that the Government intended to prove that Mojica was part of the conspiracy continuing through the alleged negotiations in the MCC. (See Transcript of pretrial discussions on March 14, 1984, pp. 2, 10.) It is also clear that, at that time, the defendant was aware that the Government intended to prove this through the testimony of Raj Tuli. (See Transcript of Government's opening state-

ment, pp. 14–16.) Nonetheless, defendant apparently still made no effort to secure Mojica's testimony.

Moreover, the Government delivered copies of Tuli's prior statements, "3500 material," to defense counsel on March 26, 1984, one week before Tuli actually testified. The defendant was aware, through this 3500 material, if not sooner, of the substance of Tuli's testimony, and, in particular, that Tuli would testify to conversations with Mojica and Cruz regarding the importation of heroin. Still, the defendant did not try to secure Mojica's testimony (or a continuance to attempt to secure his testimony).

Tuli testified on April 2, 1984. During that testimony, Tuli stated that he had met Cruz in the MCC while he was there awaiting sentence. Cruz had been introduced to him by Mojica. He further stated that the three of them had several discussions about devising a scheme to import quantities of heroin from India. Tuli was cross-examined extensively regarding these alleged conversations. Nonetheless, the defendant did not attempt to secure Mojica's testimony nor did he seek a continuance for that purpose.

Finally, Cruz testified on April 7, 1984. Cruz admitted that Mojica is a friend of his, but denied ever having any business dealings with him, or any knowledge of Mojica's "business" other than his knowledge that Mojica was a cab driver. Furthermore, Cruz admitted that Mojica had introduced him to Tuli in the MCC, but vehemently denied being party to any drug related discussions. The defense rested after Cruz testified, without calling Mojica.

Defendant offers no excuse for the failure to attempt to secure Mojica's testimony before, or during, trial. Defendant claims, in his reply papers on this motion, that

---

**3.** Mojica's statements contradict those of Tuli. While they obviously, therefore, have bearing on the credibility of Tuli's testimony (and on whether that testimony was perjured), they do not *prove* that Tuli's testimony was perjured because they, too, are subject to impeachment and are of questionable credibility. Moreover,

the "perjurious" nature of Tuli's testimony, in itself, cannot be considered newly discovered. Cruz testified at the trial. His testimony contradicted Tuli's testimony regarding the alleged conversations. Indeed, Cruz specifically testified that Tuli "lied" about these discussions.

"[d]efense counsel took it as good faith as to what the Government offered." Putting aside the efficacy of defense strategy which accepts the substance of the Government's case on "good faith," defendant cannot seriously argue that he *did* accept the Government's evidence on good faith. Cruz testified and specifically refuted Tuli's testimony in this regard. Cruz stated that Tuli "lied" regarding the alleged discussions.

It is plain that defendant did not exercise due diligence in attempting to discover this .evidence before or during trial. Cruz knew the substance of Tuli's testimony and the importance of Mojica's testimony in refuting it. *See, e.g., United States v. Roberts,* 388 F.2d 646 (2d Cir.1968); *United States v. Puco,* 338 F.Supp. 1252, 1255 (S.D.N.Y. 1972). There is no question about Mojica's availability at the time of the trial. *Cf. United States v. Beasley,* 582 F.2d 337, 339 (5th Cir.1978) ("where a party fails to call a witness who was available during trial, the testimony of that witness cannot be considered newly discovered evidence"). More significantly, Cruz knew that Mojica had introduced him to Tuli and knew whether or not Mojica was present for any conversations regarding drugs among the three of them. *See United States v. Erb,* 543 F.2d 438 (2d Cir.), *cert. denied,* 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976) (conflicting testimony regarding question of whether defendant was present at a particular meeting); *Roberts,* 388 F.2d 646.

In *Roberts,* a case very similar to this, the key Government witness at trial was an undercover narcotics agent. The agent testified that an informant introduced the defendant to him and was present while the defendant negotiated, and ultimately consummated, heroin sales to the agent. The defendant testified at trial, and admitted that the informant, who he previously knew, introduced him to the agent. He denied, however, that there was any conversation regarding, or any subsequent sale of, narcotics. The informant did not testify. Defendant's post-conviction motion based on proffered newly discovered evidence that the informant would testify

corroborating the defendant's testimony and refuting the agent's was denied because defendant had not exercised the requisite due diligence. *Roberts* is squarely on point with regard to· Cruz's showing of due diligence. *See also Puco,* 338 F.Supp. 1252 (post-conviction proffer of testimony of alibi witnesses that defendant with them; insufficient showing of due diligence for new trial); *United States v. Rogers,* 182 F.Supp. 786 (E.D.N.Y.1960) (post-conviction proffer of testimony of witness present with defendant at time of prior statements by Government witness; no due diligence).

Finally, Cruz's decision not to attempt to call Mojica as a witness appears to have been a strategic decision. Defense counsel argued in summation that Mojica may have been involved with Tuli in negotiating heroin importation (Tr. 1528) but that Cruz was not involved, and especially, that there was no corroborating evidence to support Tuli's testimony (Tr. 1534–35). *Cf. United States v. Tramunti,* 500 F.2d 1334, 1349–50 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974) (decision to call attention during summation to Government's failure to introduce corroborative testimony precluded post-trial argument for new trial where counsel on notice of basic facts which could have revealed subsequently discovered, allegedly exculpatory, testimony).

3. Exculpatory nature of evidence.

Mojica's statements to the Government, proffered now by the defendant as exculpatory, are ambiguous at best. Mojica apparently did say that no conversations regarding importation of heroin occurred at the MCC involving *all* three—Mojica, Cruz and Tuli. To the extent that this is, indeed, exculpatory, it simply is not enough. Mojica's statements, taken as a whole, are not exculpatory. Mojica's statements corroborate, in part, Rodriguez's testimony regarding the drug operation in Apartment 2E. Moreover, Mojica relayed incriminating statements that Cruz had made while in the MCC. *See United States v. Murphy,* 715

F.2d 39, 41 (2d Cir.1983) (new evidence actually strengthened prosecution case); *see also Beasley*, 582 F.2d at 340 ("Although ... [the statements of the new witness] do not confirm the testimony of other witnesses, jot by jot, in every detail, the portions of them that would favor [defendant] or conflict with testimony of witnesses actually called at the trial are isolated items in a mass of incriminating material.")

Even insofar as Mojica's statements corroborate Cruz's testimony that no tripartite conversations occurred, they do not necessarily exculpate Cruz of dealing with Tuli in the MCC. Mojica disclaimed any knowledge of Cruz's dealings with Tuli, and even suggested at one point that Cruz and Tuli may have been dealing behind his back. (Cartusciello Aff., ¶ 11a.) To this extent, Mojica's statements merely impeach the testimony of Tuli and are not proper grounds for a new trial. *See Alessi*, 638 F.2d at 479; *Rosner*, 516 F.2d at 273–74; *United States v. Passero*, 290 F.2d 238, 245 (2d Cir.), *cert. denied*, 368 U.S. 819, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

### 4. Cumulative.

Tuli was impeached at trial through his prior conviction. Defense counsel, in summation, referred to Tuli as an "informant who needs to help himself. He wants his jail sentence to be lightened." Further, Tuli was cross-examined thoroughly regarding these alleged conversations. Finally, Cruz testified at trial and refuted Tuli's testimony. Mojica's tendered statements are, thus, merely cumulative of testimony given at the trial and are not properly the grounds for a new trial. *See Gilbert*, 668 F.2d 94 (witness already impeached); *Tramunti*, 500 F.2d at 1349 (same; witness referred to during summation as a "liar with a criminal record"); *Puco*, 338 F.Supp. 1252 (alibi witnesses would be cumulative of defendant's testimony).

### 5. Probability of acquittal.

Cruz claims, in relevant part, as follows:

Mojica's testimony would certainly have lead [sic] to an acquittal and certainly would change this entire trial. The change [sic—presumably "charge"] would have to be different, Count 2 would have to be dismissed as a matter of law since Count 2 of the indictment states that the Defendant was engaged in a continuing criminal conspiracy [sic] which included Mojica and his girlfriend Daisy Rodriguez. They were part of the alleged five that the Defendant would be doing business with and directing.

Cruz's arguments are to no avail. The evidence against him was overwhelming. The testimony of Rodriguez alone would have been enough for the jury to find Cruz guilty on all six counts. Defense counsel acknowledged this in summation when he said that "each one of these counts necessarily relies for its validity on the testimony of Wildredo Rodriguez." (Tr. 1501.) Rodriguez testified regarding the three quantity sales of heroin. Rodriguez testified about the day to day drug operation. Rodriguez testified about the gun Cruz carried during his participation in the daily drug operation.

Mojica and Daisy Rodriguez were mentioned as people the Government contends acted in concert with, and were supervised by, Cruz. They were not, however, two of only five possible subordinates. The Government in summation, listed at least nine for the jury, and emphasized the five participants in the daily drug operation at Apartment 2E described by Rodriguez—Rodriguez, Reyes, Marquez, Jose at 143rd Street and Willis Avenue and the man at Anthony Avenue. (Tr. 1478.) Rodriguez also listed a sixth Carlos Rivera-Gonzalez. The drug records seized from Cruz's second apartment revealed perhaps three more individuals—Richie, Pedro, and Skippy. It is clear, therefore, that Cruz would not have been entitled to a directed verdict absent Tuli's Testimony.

Based on Rodriguez's testimony and the corroborating evidence, the "jury could without difficulty have disbelieved [Tuli] and nonetheless convicted" Cruz. *Gilbert*,

668 F.2d at 96; *see also Rogers,* 182 F.Supp. at 787. Moreover, many of Mojica's statements serve only to strengthen the Government's case against Cruz. Thus it can hardly be argued that Mojica's comments introduce a probability of acquittal into these proceedings. *See Murphy,* 715 F.2d at 41–42.[4]

This is especially so given the nature of the proffered testimony.[5] Mojica's statements are clearly self-protecting. At times he tries not to incriminate Cruz—although some of his statements are very incriminating—but, for the most part, he appears to be simply exculpating himself by extricating himself from any drug dealings with Tuli and/or Cruz. Mojica, therefore, is yet another witness with a motive to lie. *Cf. Baca v. United States,* 312 F.2d 510 (10th Cir.1962) (rejecting unsworn statement of defendant's brother as "new evidence" because, inter alia, incredible), *cert. denied,* 373 U.S. 952, 83 S.Ct. 1682, 10 L.Ed.2d 706 (1963). Mojica's inconsistent, ambiguous statements, which, perhaps, exculpate Cruz in only one regard, and incriminate Cruz in other respects, warrant neither a new trial nor a hearing. There simply is no probability of acquittal based on this newly-discovered evidence considering both its impact on the factual elements of the Government's case and its impact on the credibility of Tuli's testimony. *See Stofsky,* 527 F.2d at 246.

▪ In sum, Cruz cannot be heard to argue *now* for a new trial based on Mojica's statements. He knew Mojica's identity well in advance of the lengthy trial held herein. He knew that Mojica was allegedly a co-conspirator and a subordinate in the continuing criminal enterprise. He knew the substance of Tuli's testimony, and the fact (if so) that Mojica could rebut it. In other words, he knew the importance of Mojica's testimony on his behalf. He also knew Mojica's whereabouts. Yet he did not subpoena Mojica, nor did he seek to have the Government produce Mojica, nor did he ever seek an adjournment of the trial until Mojica's testimony could be obtained. *See United States v. Lanza,* 329 F.2d 422, 423 (2d Cir.1964). Now he proffers statements by Mojica which, on the whole, strengthen the Government's case and which raise no probability that Cruz would have been, or would be, acquitted. Accordingly, his motion for a new trial, or for an evidentiary hearing, must perforce be DENIED.

SO ORDERED.

---

**4.** Since the evidence in this case, like that proffered in *Murphy,* is totally inadequate to warrant a new trial, the Court does not address whether the evidence is to be measured for its probability to result in an acquittal on retrial or for the probability that it would have resulted in an acquittal, if introduced, at the first trial. *Compare Polisi,* 416 F.2d at 577 (1969) (retrial), *with Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (first trial); *see also Murphy,* 715 F.2d at 42 n. 7. To be sure, Cruz would prefer that the assessment be made prospectively, since Tuli would be unavailable to testify at the retrial—thus forcing the Government to read Tuli's testimony to the jury rather than having the powerful, live testimony before them. I feel that the retrospective method is the preferable one because it allows for an analysis based on the course of an actual trial which I had the opportunity to observe. Nonetheless, I need not reach that question here because the new evidence tendered here is insufficient under either test.

**5.** The Court is shocked that defendant did not, at any time before, during, or after trial, attempt to secure the sworn testimony of Mojica. The very least this Court would have expected on this Rule 33 motion was the affidavit of Mojica, submitted by Cruz, detailing Mojica's proposed testimony. *See Costello,* 255 F.2d at 879 (requiring "[t]hat the affidavit of the witness himself should be produced, or its absence accounted for") (*quoting Berry,* 10 Ga. 511, 527). The Court cannot help but question defense counsel's continued reliance upon the Government to do his work for him.