**UNITED STATES of America,**

v.

**PAUL NOSWORTHY, Defendant.**

**No. 07–CR–771 (ENV).**

United States District Court, E.D. New York.

April 23, 2010.

Valerie Tocci, U.S. Attorney's Office, Brooklyn, NY, for United States of America.

James Kousouros, Kew Gardens, NY, for Defendant.

### MEMORANDUM & ORDER

VITALIANO, District Judge.

Defendant Paul Nosworthy, convicted after jury trial, has moved for a new trial and for a re-opened suppression hearing, pursuant to Federal Rule of Criminal Procedure 33. For the reasons set forth below, his motion is denied in its entirety.

## BACKGROUND

Familiarity with the facts is presumed. In brief, on September 20, 2009, Nosworthy was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Nosworthy contends that the government's failure to disclose the 2007 suppression hearing testimony of New York Police Department Officers Christopher Lesiewicz and George Dumont in *United States v. Esterine*, No. 07–CR–258 (E.D.N.Y.)—testimony that Nosworthy claims mirrored the officers' testimony in his case—violated the government's obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); the Jencks Act, 18 U.S.C. § 3500(b); and Federal Rule of Criminal Procedure Rule 26.2. In any event, notwithstanding any violation by the government of its disclosure obligations, defendant contends that his discovery[1] of the *Esterine* testimony constitutes "newly discovered evidence" under Federal Rule of Criminal Procedure 33, warranting the grant of both a new trial and a re-opened suppression hearing.

## STANDARD OF REVIEW

■ Federal Rule of Criminal Procedure 33(a) states, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." More pertinently here, "[a] new trial[2] based on newly discovered evidence will be granted only if the following criteria are met: (1) the evidence must, indeed, be newly discovered, i.e., discovered after trial; (2) the evidence must be such that it could not, with due diligence, have been discovered prior to or during trial; (3) the evidence must be material to the issue of guilt, and not merely for the purpose of impeaching other testimony; (4) the evidence must not be cumulative; and (5) the evidence must be such that it would probably lead to acquittal." *United States v. Cruz*, 602 F.Supp. 825, 828–29 (S.D.N.Y.1985) (citing, *inter alia*, *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir.1980)).

■ Motions for a new trial are generally disfavored. *See United States v. Spencer*, 4 F.3d 115, 118 (2d Cir.1993) (citing *United States v. Gilbert*, 668 F.2d 94, 96 (2d Cir.1981)).

## DISCUSSION

### I. *Brady*

■ Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. "There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [prosecution], either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

■ With respect to the first component, "[i]mpeachment evidence is evidence 'having the potential to alter the jury's

---

**1.** This is not a case of late discovery by the government of evidence that, when subsequently disclosed, is claimed by the defendant to be critical to his defense. The testimony was apparently available in the public domain and found independently by the defense, albeit post-trial.

**2.** The same criteria apply to a motion for a new suppression hearing. *See United States v. Oates*, 445 F.Supp. 351, 353 (E.D.N.Y. 1978), *aff'd without op.*, 591 F.2d 1332 (2d Cir.1978).

assessment of the credibility of a significant prosecution witness.' " *United States v. Rivas,* 377 F.3d 195, 199 (2d Cir.2004) (citing *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir.1998)); *see also United States v. Payne,* 63 F.3d 1200, 1210 (2d Cir.1995) ("In general, impeachment evidence has been found to be material where the witness at issue 'supplied the only evidence linking the defendant(s) to the crime,' or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." (citations omitted.)). With respect to the second, "[d]ocuments that are part of public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation." *Payne,* 63 F.3d at 1208 (citation omitted). Finally, prejudice or "[m]ateriality of *Brady* evidence is established when there is a reasonable likelihood that disclosure of the evidence would have affected the outcome of the case, or would have put the case in such a different light as to undermine confidence in the outcome." *Rivas,* 377 F.3d at 199 (citing *Kyles v. Whitley,* 514 U.S. 419, 434–35, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

Nosworthy's *Brady* claim lacks all three components.

First, the *Esterine* testimony is utterly devoid of exculpatory value. Although Officers Lesiewicz and Dumont were certainly important witnesses for the prosecution, nothing to which either officer testified in *Esterine* was of any relevance to Nosworthy's case, and, therefore, inadmissible under Federal Rule of Evidence 402. Nor is it of any value in impeaching the police testimony. There is simply nothing about the testimony of Lesiewicz and Dumont in *Esterine* that could have altered or ad-versely affected a reasonable fact-finder's assessment of their credibility. Nosworthy has demonstrated nothing about the *Esterine* testimony—even in its supposed similarity to that offered by the same witnesses in his own case—that could have impeached the officers in any way. Indeed, the evidence more likely would have had the opposite effect, showing that these officers assigned to the Street Narcotics Enforcement Unit had in the ordinary course of their patrols made similar stops on similar facts.

To illuminate, the fact that two street narcotics officers would give testimony on more than one occasion about coming across an alleged parking violation, stopping to investigate it, smelling marijuana, and subsequently making an arrest does not suggest a pattern of mendacity or, even, that either officer testified falsely in either case. Tellingly, Magistrate Judge Mann credited the officers' testimony in *Esterine.* In other words, Nosworthy does not have a prior inconsistent statement or a finding of incredibility to lean on as an impeachment tool. In the absence of any showing of bias on the part of the officers (and there is no such showing), the prior similar testimony is not impeaching. It is simply irrelevant.

█ In short, Nosworthy has not demonstrated that disclosure of the "evidence," had it otherwise been disclosable, would have affected the outcome of the case or that it would have cast the case in a different light. For what it was worth, there was a "withering" cross examination of Officer Lesiewicz, and the similarly thorough cross examination of Officer Dumont, without the claimed suppressed evidence. Introduction of the *Esterine* testimony would merely have been a cumulative effort to impeach them, assuming it did not have a rehabilitative effect.

■ As for the suppression hearing, the "new" evidence would most certainly not have changed the result. The crux of the dispute was whether defendant's vehicle was illegally parked, justifying a police stop. At the hearing, Nosworthy called Edmundo Abrigande, who, while challenging some of the police account of the traffic stop prior to the discovery of the firearm, testified that Nosworthy's car was most certainly parked illegally, giving the officers objective probable cause to make the stop. *See, e.g., Arizona v. Johnson,* ―― U.S. ――, 129 S.Ct. 781, 787–88, 172 L.Ed.2d 694 (2009); *see also id.* at 784; *cf. United States v. Bayless,* 201 F.3d 116, 132–34 (2d Cir.2000). "Motive" for the stop is irrelevant to this determination, regardless whether the testimony concerning it is credible. Though controverting the police testimony that Nosworthy's vehicle was also illegally parked because it was too far from the curb, Abrigande's testimony was otherwise actually confirmatory of the police account of the arrest. Therefore, even if the Court were to disregard as incredible all of the police testimony about how they came to order Nosworthy out of his vehicle, which the Court did not, suppression would certainly still be denied. Any negative light that could have been cast on the officers' trustworthiness by the *Esterine* testimony was more than outshone by the actual cross examination of the two officers at trial and during the suppression hearing.

## II. Jencks Act

Title 18, section 3500(b) (the Jencks Act) provides, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement[3] . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use." Similarly, under Federal Rule of Criminal Procedure 26.2, which covers suppression hearings, "[a]fter a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony."

■ Somewhat tautologically, a statement that relates "must relate generally to the events and activities testified to." *United States v. Cardillo,* 316 F.2d 606, 615 (2d Cir.1963) (citations omitted). It cannot be merely "incidental or collateral" to the witness's testimony. *Id.* at 616. Statements that support impeachment for bias and interest can (although need not) relate. *See United States v. Birnbaum,* 337 F.2d 490, 497–98 (2d Cir.1964) (citing *Rosenberg v. United States,* 360 U.S. 367, 370, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959)); *see also United States v. Jackson,* 345 F.3d 59, 77, 77 n. 14 (2d Cir.2003).[4]

---

**3.** A statement is defined, *inter alia,* as "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement." 18 U.S.C. § 3500(e).

**4.** "Federal Rule of Criminal Procedure 26.2 embodies the substance of the Jencks Act." *United States v. Perez,* No. 05–CR–441, 2005 WL 2709160, at *3, 2005 U.S. Dist. LEXIS 24444, at *10 (S.D.N.Y. Oct. 20, 2005). Thus, the Court will apply the same analysis to Nosworthy's Jencks Act and Rule 26.2 claims.

■ Here, the *Esterine* testimony does not "relate" to the subject matter on which the officers testified in *Nosworthy*. The events and activities testified to in *Esterine* were not even incidental or collateral to those in *Nosworthy*. And, of course, as discussed above, the testimony does not impeach for bias, interest, or any other permissible credibility challenge. Failure to produce it, consequently, does not violate the Jencks Act or Rule 26.2. *See, e.g., United States v. Catalano,* 491 F.2d 268, 274–75 (2d Cir.1974) (citations omitted).

### III. Rule 33

■ Beyond the fact that (1) Nosworthy has not proven a *Brady* or a Jencks Act violation and (2) "[n]ew evidence that is merely impeaching will not ordinarily justify a new trial," *United States v. Reyes,* 49 F.3d 63, 68 (2d Cir.1995) (citations omitted), his Rule 33 motion fails independently under *Cruz*. While it is clear that Nosworthy did not come across the *Esterine* testimony until after his conviction, the Court finds that the *Esterine* testimony of Officers Lesiewicz and Dumont could have been discovered prior to or during trial with minimal due diligence. Frankly, the fact that it was not suggests that no one looked for it and probably because no one believed that any such testimony could have evidentiary value. In any case, the proffered evidence is wholly irrelevant to the issue of Nosworthy's guilt or innocence and relates, however dubiously, only to the most generous theory of admissibility, that is, as somehow impeaching Officers Lesiewicz and Dumont. Even there it was cumulative to say the least, given that Nosworthy's counsel had made ample use of the real impeachment material available. The value of the *Esterine* testimony, claims Nosworthy, was to prove the police testimony against him was a lie in whole or relevant part. Assuming for argument that it was admissible on that basis, the *Esterine* testimony would have been cumulative to the actual cross examination designed exclusively to obtain the same objective. *See, e.g., United States v. Locascio,* 6 F.3d 924, 949 (2d Cir.1993). Certainly, the officers' testimony in *Esterine* under no stretch of imagination, creative or otherwise, would have probably led to Nosworthy's acquittal.

## CONCLUSION

For the foregoing reasons, defendant's motion for a re-opened suppression hearing and a new trial is denied.

SO ORDERED.