UNITED STATES of America

v.

Nelson CASTANO, Defendant.

No. 89 Cr. 0440 (JES).

United States District Court,
S.D. New York.

Feb. 19, 1991.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for the U.S.; Lawrence Byrne, Asst. U.S. Atty., of counsel.

Orden & Cohen, New York City, for defendant Nelson Castano; Stewart Leigh Orden, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

On October 5, 1989, following a jury trial, defendant Nelson Castano was convicted of conspiracy to distribute cocaine and

possession of approximately one kilogram of cocaine with the intent to distribute. Castano moves for a new trial pursuant to Fed.R.Cr.P. 33. For the reasons that follow, the motion is denied.

## BACKGROUND

Nelson Castano and four co-defendants, Raul Morales, Ramon Padilla, Basilio Vasquez, and Rodrigo Vasquez, were indicted in a two count indictment, which charged them with conspiracy to distribute cocaine and possession of one kilogram of cocaine with the intent to distribute. Padilla, Morales and Basilio Vasquez pled guilty prior to trial. The remaining two defendants, Castano and Rodrigo Vasquez, proceeded to trial and were convicted by a jury on both counts.

The evidence at trial established the following facts.

On May 26, 1989, Luis Hernandez, a confidential informant working for the United States Drug Enforcement Agency ("DEA"), met Ramon Padilla at 138th Street and Saint Ann's Avenue in the Bronx, New York. *See* Trial Transcript ("Tr.") at 75. Hernandez discussed the purchase of two kilograms of cocaine with Padilla and gave Padilla his telephone number so that Padilla could call him when he found a supplier. *See id.* at 75–76. Hernandez then returned to his apartment and telephoned Special Agent Leonard Johnson, the DEA agent who worked with him, and told him about what had transpired. *See id.* at 77.

While Hernandez was on the phone with Johnson, Padilla called Hernandez on the telephone[1] and told him to meet Padilla and another individual, later identified only as "Ralphie", on a corner a few blocks away. *See id.* at 77. Hernandez followed these instructions. *See id.* at 78. After a short conversation, the trio walked to a grocery store at 241 St. Ann's Avenue. *See id.* at 79. There, Hernandez was introduced to Basilio Vasquez and Rodrigo Vasquez. *See id.* at 80–81.

---

1. Hernandez had a feature on his telephone which allowed him to interrupt a conversation when he received a second call. *See* Tr. at 77.

Hernandez went with Padilla, "Ralphie," and Basilio Vasquez to the rear of the store, where they agreed to sell Hernandez and Elvin Laboy, an undercover DEA agent, two kilograms of cocaine for $32,000 each. *See id.* at 81–83. Basilio Vasquez then told Hernandez that he would have to wait a few hours to obtain the cocaine. *See id.* at 83. Hernandez returned to his apartment where he telephoned the agents. They told him they would wait no longer than 6:00 PM for the transaction. *See id.*

A short time later, Hernandez returned to the store on Saint Ann's Avenue, but the package was still not there. *See id.* at 84. Hernandez told the others that the deal was taking too long and that his friend would not wait any longer than 6:00 PM. *See id.* A flurry of phone calls regarding the speed of the delivery followed, *see id.* at 84–87, and, at one point, Raul Morales called Hernandez and told him he would be there soon. *See id.* at 88, 93.

Subsequently, Nelson Castano and Morales arrived, with Castano carrying two kilograms of cocaine in a shopping bag. *See id.* at 89–93, 163; *see also* 95. Each kilogram was individually wrapped in brown paper secured by tape. *See id.* at 92. After showing Hernandez one of the packages, Morales told Hernandez that he would sell only one package at that time and would sell the rest to him later. *See id.*

Subsequently, Hernandez, Morales, and Castano left, taking one kilogram of cocaine with them, to meet with Agent LaBoy in Manhattan. Castano drove the others to 97th Street and Riverside Drive in his car. *See id.* at 95–97. Basilio Vasquez, Rodrigo Vasquez, Padilla and "Ralphie" remained at the store with the other kilogram of cocaine.

When they arrived at 97th Street and Riverside Drive, Hernandez got out of the car and spoke with Agent Johnson. *See id.* at 49–50; 98. Thereafter, the Agents arrested Castano and Morales and seized one kilogram of cocaine from behind the passenger seat of the car. *See* Tr. at 37–38; 48; 52. Shortly after that, the agents and Hernandez returned to the store on St.

Ann's Avenue and arrested all of the remaining conspirators, except "Ralphie." *See id.* at 99–100; 200–01. However, the kilogram left at the store was not recovered. *See id.* at 223.

The basis for Castano's motion for a new trial consists of proposed exculpatory testimony of Morales and additional evidence bearing upon Hernandez's credibility. The first ground arises out of Castano's attempts to interview and call as a trial witness defendant Raul Morales, who had pled guilty on October 2, 1989, but had not been sentenced as of the time that Castano's trial commenced. *See* Tr. at 182; 185–87. In that connection, Morales' counsel stated that Morales would not consent to an interview and if called as a witness at trial would assert his Fifth Amendment privilege against self-incrimination. *See id.* at 219–21. Castano now asserts, in affidavits from himself and his counsel, that Morales told him approximately one and one-half weeks prior to sentencing that he would be willing to testify at a new trial and exonerate him. *See* Affidavit of Nelson Castano at ¶ 7 ("Castano Aff."); Affidavit of Stewart Leigh Orden at ¶¶ 11–12 ("Orden Aff."). Castano also maintains that Morales has reaffirmed his willingness to testify on several occasions since that time. *See* Castano Aff. at ¶ 7. However, although Castano's counsel's affidavit makes reference to possible testimony by Morales that a person named Hector was involved in the transaction, *see* Orden Aff. at ¶ 11, conspicuously absent from Castano's papers is an affidavit from Morales himself setting for the substance of his proposed testimony or, indeed, the fact that he would even be willing to testify.

The second alleged basis for a new trial arises out of the fact that following the verdict the government learned of certain events which had some bearing upon Hernandez' credibility as a result of his testimony in another case. In that case, Hernandez admitted that he had possessed a DEA shield for a short period of time and that a woman had seen that shield and formed the conclusion, not corrected by Hernandez, that he was a DEA agent or a

police officer. Hernandez also testified that he carried that shield for two days and then turned it over to Special Agent Johnson. In addition, Hernandez testified that the woman who saw the shield later loaned him $3000.00 in Atlantic City so that he could gamble. The government promptly informed counsel and the Court of these matters and enclosed a copy of the relevant trial transcript. *See* Letter of AUSA Lawrence Byrne to Messrs. Ely and Orden (Dec. 13, 1989).

## DISCUSSION

■ Fed.R.Cr.P. 33 provides that a court may order a new trial for a defendant on the basis of newly discovered evidence if the interests of justice require it. *See* Fed. R.Cr.P. 33. In order to obtain a new trial under that rule, a defendant must establish the following: (1) that the evidence is in fact newly discovered and could not have been known to the defendant at the time of trial; (2) that the evidence could not have been discovered prior to or during trial with due diligence; (3) that the evidence is material and not cumulative or merely impeaching; and (4) that the admission of the newly discovered evidence would probably lead to an acquittal. *See United States v. Diaz*, 922 F.2d 998, 1007 (2d Cir.1990); *United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir.1987); *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir.1980); *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976). However, the Second Circuit has also said that such a motion "should be granted only with great caution." *Alessi, supra*, 638 F.2d at 479 (citing *Stofsky, supra*, 527 F.2d at 243).

### Raul Morales' Testimony

■ The government argues that Raul Morales' testimony, as testimony of a co-

defendant who had previously asserted his right against self-incrimination, cannot be considered "newly discovered" under Rule 33.[2] That argument is well supported. Numerous courts have held that such testimony is not "newly discovered" where, as here, the defendant knew what the substance of that witness' testimony would have been had he testified at trial. *See, e.g., United States v. DiBernardo*, 880 F.2d 1216, 1224–25 (11th Cir.1989); *United States v. Metz*, 652 F.2d 478, 480 (5th Cir. Unit A 1981); *United States v. Diggs*, 649 F.2d 731, 739–40 (9th Cir.), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981); *United States v. Persinger*, 587 F.Supp. 899, 901 (W.D.Pa.1984); *United States v. Carlin*, 573 F.Supp. 44, 46–47 (N.D.Ga.1983), *aff'd without opinion*, 734 F.2d 1480 (11th Cir.1984); *United States v. La Duca*, 447 F.Supp. 779, 782–85 (D.N.J.), *aff'd*, 587 F.2d 144 (3d Cir.1978), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979). In addition, the Second Circuit has stated that a "district court should exercise great caution in considering evidence to be 'newly discovered' when it existed all along and was unavailable only because a co-defendant, since convicted, had availed himself of his privilege not to testify." *United States v. Jacobs*, 475 F.2d 270, 286 n. 33 (2d Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973).

In this case, while it is true that Castano and his attorney had unsuccessfully sought to interview Morales, Castano certainly knew that Morales possessed relevant information which could exonerate him because he must have known that Morales, who accompanied him on the day in question, could have testified that Castano was merely present at the scene of the crime and was not a member of the conspiracy.[3]

---

**2.** If the evidence is not newly discovered then a motion for a new trial based upon that proof would be subject to the jurisdictional seven day time limitation set forth in Rule 33, which clearly expired before Castano's motion was made. *See United States v. Dukes*, 727 F.2d 34, 38 (2d Cir.1984).

**3.** Indeed, Castano himself could have testified to the same effect as Morales, *i.e.*, that he was not a member of the conspiracy, but chose not to. In fact, had Castano done so, his testimony might well have been credible to a jury, notwithstanding his status as a defendant, because he, unlike Morales, had no previous criminal record. *Cf. United States v. Simmons*, 714 F.2d

Moreover, since it is undisputed that Castano was present at the store on May 26 and drove Morales from Queens to the Bronx and then, with Hernandez, from the Bronx to Manhattan, if there were a "Hector" involved in the conspiracy Castano surely must have known of his existence. Given these circumstances, Morales' testimony can at best be characterized as "newly available," which is not "synonymous with newly discovered evidence on a Rule 33 motion." *DiBernardo, supra,* 880 F.2d at 1225; *see Metz, supra,* 652 F.2d at 480–81.[4]

However, even assuming arguendo that the evidence were newly discovered, a new trial is not warranted under Rule 33 because Castano has failed to show that he exercised the due diligence required by the Rule. Although Castano and his counsel were well aware of the content of Morales' prospective testimony, and certainly knew if there were a "Hector" involved in the conspiracy, after being advised by Morales' counsel that he would assert his Fifth Amendment rights, Castano failed to either subpoena Morales, request a continuance until after Morales had been sentenced, or request that the government grant Morales immunity. *See United States v. Cruz,* 602 F.Supp. 825, 830 (S.D.N.Y.1985); *La Duca, supra,* 447 F.Supp. at 786–88. Indeed, counsel never made any effort at trial to establish or inquire about the existence of a "Hector," or any other person who came from Queens with Morales and Castano, and who therefore might have had any connection with this conspiracy, in his examination of any other witness.[5]

Moreover, in view of the evidence introduced at trial referred to above, there is no likelihood that this evidence " 'would proba-bly lead to an acquittal,' ... and would create 'a reasonable doubt that did not otherwise exist.' " *Diaz, supra,* 922 F.2d at 1006 (quotations omitted). The evidence established that Castano carried the narcotics into the store, *see* Tr. at 91; that Castano drove Morales and Hernandez to Manhattan to meet the undercover agent with the cocaine stored under the passenger seat of his car, *see* Tr. 96–97; and that Castano had corroborated what Morales said about getting more cocaine if the deal worked out. *See* Tr. at 159. In addition, it was not disputed that Castano owned the car and that a kilogram of cocaine was seized from behind the passenger seat of that automobile. In view of this evidence, and the attack that could have been made upon Morales credibility based upon his criminal record, there is virtually no likelihood that any exculpatory evidence from Morales would or could have affected the outcome of Castano's trial. This is especially true since Morales, as a sentenced co-defendant, had nothing to lose by exonerating Castano and his testimony is therefore "inherently suspect." *La Duca, supra,* 447 F.Supp. at 782–83; *accord Simmons, supra,* 714 F.2d at 31–32; *Carlin, supra,* 573 F.Supp. at 45–46.

*The Impeachment Material Regarding Luis Hernandez*

▮▮▮▮ Castano also asserts that he is entitled to a new trial on the basis of information provided by the government after trial regarding Hernandez's possession of a DEA shield and his illegal gambling debt. However, where, as here, there has been no showing of bad faith by the government,[6] the defendant bears the bur-

---

29, 32 (5th Cir.1983); *Metz, supra,* 652 F.2d at 480.

**4.** The Court notes, however, that Castano can seek a new trial based upon Morales' unavailability by means of a petition under 28 U.S.C. § 2255 (1988) even if the motion is not cognizable under Rule 33. *See DiBernardo, supra,* 880 F.2d at 1226–27; *Dukes, supra,* 727 F.2d at 41.

**5.** The only questions asked by Castano's counsel on cross-examination of Hernandez having any conceivable relevance to the presence of a third person with Castano and Morales were a series of questions regarding the fact that Hernandez did not see them drive up and park the car, *see* Tr. at 155, and one question about whether Hernandez saw anyone other than Castano carry a package into the store. *See* Tr. at 163–64. All of these questions were answered in the negative.

**6.** Castano argues that the government's bad faith is demonstrated by the fact that Agent Johnson, having taken the shield from Hernandez, knew that he had possessed it before the trial. However, the Court accepts as true the representation made by the Government at Oral Argument that Johnson had no knowledge that

den of demonstrating that the new evidence would probably have resulted in an acquittal. *See Diaz, supra,* 922 F.2d at 1006–1007; *United States v. Stofsky, supra,* 527 F.2d at 245–46; *Cruz, supra,* 602 F.Supp. at 829. Tested by that standard, a new trial is clearly not required here.

Hernandez was extensively and aggressively cross-examined about prior convictions for attempted robbery, illegal possession of a weapon, and possession of stolen property. In addition, he was also cross-examined about a plea of guilty to a charge of mail fraud in connection with stealing credit cards and checks from the mail in excess of $50,000 and a charge of impersonating a postal inspector which had been dismissed. In the face of that extensive impeachment, the Court concludes that the proposed new evidence would have been at best cumulative and therefore would not have been likely to result in an acquittal. *See, e.g., Diaz, supra,* 922 F.2d at 1006–1007; *United States v. Tutino,* 883 F.2d 1125, 1140 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1139, 107 L.Ed.2d 1044; *United States v. Gilbert,* 668 F.2d 94, 96 (2d Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982).

The Court finds no merit to Castano's claim that the impeachment evidence when taken in connection with Morales' proposed testimony would have altered the outcome even if the impeachment evidence considered alone would not have had that effect. The precise nature of Morales exculpatory testimony is, as noted above, not clear because the substance of that proof has not been presented to the Court by means of an affidavit from Morales. Although there is the suggestion that Morales would say someone named Hector was involved, the Court has no way of knowing what role Hector is alleged to have played or whether he was allegedly in the car with Morales and Castano. It is therefore not even clear that Morales would contradict Hernandez's testimony that he saw no one other than those he

testified about involved in the transaction and thus no basis to conclude that further impeachment of Hernandez would have in any way enhanced the credibility of Morales' exonerating testimony.

### CONCLUSION

For the reasons set forth above, defendant Nelson Castano's motion for a new trial is denied.

It is SO ORDERED.

---

Hernandez had shown the shield to anyone at the time of trial or that he had incurred an illegal gambling debt. Since the mere possession of a DEA shield had no bearing upon Hernandez's credibility, it can hardly be said that the government acted in bad faith by not informing the defendants of that circumstance.