**UNITED STATES of America,**

v.

**Kwok Ching YU, Defendant.**

**No. 90 Cr. 47 (RWS).**

United States District Court,
S.D. New York.

Oct. 25, 1995.

Mary Jo White, United States Attorney for the Southern District of New York, New York City (Tai H. Park, Assistant US Attorney of counsel), for U.S.

Bythewood and Associates, Garden City, NY (David A. Bythewood, of counsel), for Defendant.

## *OPINION*

SWEET, District Judge.

Defendant Kwok Ching–Yu ("Yu") has moved pursuant to Rule 33, Fed.R.Crim.P. for an order granting him a new trial. For the following reasons, the motion is denied.

### *Procedural and Factual Background*

Following a second jury trial[1], petitioner Yu was convicted on December 15, 1992 for, among other counts, possession with intent to distribute two kilograms of heroin seized by DEA agents at a Texaco gasoline narcotics bust on November 8, 1988 (the "Texaco count"). Yu was found guilty of two counts of conspiracy to import into the United States and to distribute more than one kilogram of heroin in violation of 21 U.S.C. §§ 846 and 963; of being a principal administrator of a continuing criminal enterprise in violation of 21 U.S.C. §§ 848(a) and (b); of two counts of importing heroin into the United States in violation of 21 U.S.C. §§ 812, 952, 960(a)(1), 960(b)(1)(A) and 18 U.S.C. § 2; and of possession of heroin with intent to distribute in violation of 21 § 812, 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2. The Count at issue here is count seven from the initial indictment, the Texaco count.

During the trial, both at the close of the Government's case and again at the end of the trial, Yu moved pursuant to Fed. R.Crim.P. 29 for acquittal on the Texaco count due to insufficiency of the evidence connecting Yu to the heroin seized at the Texaco station. Both motions were denied.

The evidence at trial regarding the Texaco heroin was provided through testimony of Davies Yu ("Davies") and a DEA agent. It was established that Yu recruited Davies and Simon Lai to transport Yu's heroin from Hong Kong to New York. The Texaco sta-

tion incident occurred on November 8, 1988 when Davies and Tony Wong ("Wong" or "Tony") were arrested at the scene of a narcotics bust on Seventh Avenue in Manhattan where several kilograms of heroin were confiscated. The Government alleged that the heroin sold by Wong at the Texaco station was part of the scheme that involved Yu. The Government alleged that Yu supplied the heroin to Wong, through Davies, that was involved in the Texaco count. With regard to the heroin from Yu for Wong, Davies testified as follows:

Q: Around when was that?

A: Around the beginning of November [1988].

Q: Did Tony tell you how much heroin he wanted.

A: He wanted ... ten to fifteen [units] ...

\* \* \* \* \* \*

Q: And when Tony told you this, what did you tell him?

A: I said I will ask for him.

Q: Did you tell him who you would ask?

A: I don't remember if I told him I would ask [Yu]. ... [After this conversation with Tony] I called [Yu] ... I told him that Tony wanted about ten units or so. ... He said he will think and if he had any he would call me.

Q: Did there come a time when the defendant called you?

A: Yes. ... He said he will give me 20. But when we go get it, it will be more than 20. But the rest he wanted me to drive down to Chinatown for him. ... [We drove to] Queens Boulevard. ... He said the car was parked across the street. He said that there are two boxes of merchandise in the trunk. ... And then I got into the car and drove the car back to Manhattan. ... I first stopped at 28th Street ... Tony was waiting for me there. ... I asked him—asked Tony to take one box away. ... After I parked I called [Yu]. ... And then I arranged for [Yu] to

---

**1.** A first trial commenced on April 6, 1992 and concluded on April 23, 1992, when a mistrial was declared after the jury reported that it was deadlocked on the third day of deliberations.

come down to Chinatown and give him back the car key....

Q: After you returned the car to the defendant, what did you do?

A: And then I went back to 28th Street.

Q: When you got back to your apartment at 28th Street, who was there?

A: Tony Wong.... He said he was contacting the clients to sell things to them....

Q: Directing your attention to November 8th of 1988 ... where was the heroin that you had delivered to Tony after getting it from the defendant?

A: It was still in my closet ... [e]xcept for the ones that Tony had sold....

Q: What happened on the evening of November 8th of 1988?

A: Tony Wong and I were arrested.... That night Tony, his girlfriend came up to our apartment to pick us up, my girlfriend had not changed yet. And Tony hurt his eye that day so he couldn't drive. He said he wanted to go down to 7th Avenue. Originally his girlfriend was going to drive him down. I said, Why don't we just let the girls stay. I said I would drive him down.

Q: At the time that you agreed to drive Tony down to the [Texaco] gas station, did you know what he was going to do at the gas station?

A: No. He just said I will drive him down there for a few minutes.

Q: Did you drive Tony Wong down to the gas station?

A: Yes.... Tony got off. He asked me to park aside and wait for him, he will be very quick.... As soon as I saw several people push Tony down on the ground and then several guns pointed at me.

Earlier in the trial, the government put agent Nargi on the stand. In describing his observations at the Texaco station on November 8, he stated:

A: After we made the arrests, the phone at the gas station continued to ring, and we had the confidential informant answering the phone. After the informant had a conversation on the phone, we talked to the informant, and after talking to the informant, we established surveillance in and around the outside of the gas station in anticipation of the informant meeting someone that was coming to the gas station.

Q: Now, while you were conducting this second surveillance on November 8, 1988, what did you observe?

A: We—I observed an oriental male [, Tony Wong,] come to the gas station and meet with the informant, converse with the informant for a period of time, go to the informant's trunk, look in the trunk in a bag, and shortly after that we placed [Tony Wong] under arrest.

... [In May of 1989] [a] number of those people [from the Texaco station], including Tony Wong were convicted.

Davies testified that the heroin he had received from the defendant was all in the closet except for that which had been sold by Wong. He added that there was money in the closet for all the sold heroin. At the appellate argument, counsel for Yu argued that because all of the heroin that Yu had supplied was accounted for, the money that Wong was going to pick up, must be for heroin not supplied by Yu and that there was no nexus between Yu and the heroin at the Texaco station. In affirming the conviction, the Court of Appeals rejected this argument.

Because the conspiracy of which he was convicted involved 231 kilograms of heroin, pursuant to 21 U.S.C. § 848 a sentence of life imprisonment was required, in addition to five years of supervised release. This sentence was imposed at a sentencing hearing on December 3, 1993.

The conviction was appealed to the Court of Appeals on grounds including insufficient evidence convicting Yu with the transaction at the Texaco station. Following oral argument on September 19, 1994, the Court of Appeals affirmed his conviction in all respects on September 20, 1994.

The Court of Appeals also denied Yu's ineffective assistance of counsel claim, holding that trial counsel did request a missing witness charge that the Court properly denied because Tony Wong was available to be

called by the defense, if they so chose. The Court of Appeals also found that Tony Wong "the witness whom the defendant claims should have been called by his counsel had previously submitted an affidavit which indicated that he was likely to inculpate the defendant. Defendant's counsel was surely justified in not calling him."

On December 21, 1994, the Court of Appeals denied petitioner's Petition for Rehearing and Suggestion for Rehearing In Banc.

This motion to set aside judgment and for a new trial was filed on June 21, 1995. Oral argument was heard on August 23, 1995 at which time the motion was considered fully submitted.

### Discussion

Yu asserts that information discovered only at oral argument before the Court of Appeals, entitles him to new trial. The "newly discovered evidence" on which Yu bases his motion consists of the Assistant U.S. Attorney's statement at the appellate argument that Wong's testimony at trial would have added nothing to the evidence provided by the Government at trial: "The link is all there, Davies Yu provides the link in his testimony. I think the focus has been on page 206 and 207 [of the trial transcript], but if you go to page 200 and a few pages beyond 207, you will see that the complete link is there. So Tony Wong would not have added more to that."

■ Motions for a new trial based on newly discovered evidence are not favored and should be granted only with great caution, and in "the most extraordinary of circumstances." *United States v. Spencer*, 4 F.3d 115, 118 (2d Cir.1993) (quoting *United States v. Imran*, 964 F.2d 1313, 1318 (2d Cir.) (in turn quoting *United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir.1987)), *cert. denied*, —— U.S. ——, 113 S.Ct. 626, 121 L.Ed.2d 558 (1992); *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 65, 66, 50 L.Ed.2d 80 (1976). To obtain a new trial based on newly discovered evidence, the defendant must show (1) that the evidence is truly newly discovered, i.e., discovered after trial; (2) that it could not, with due diligence, have

been discovered prior to or during trial; (3) that the evidence is material and not cumulative or impeaching, and (4) that the evidence would probably lead to acquittal. *United States v. Underwood*, 932 F.2d 1049, 1052 (2d Cir.), *cert. denied*, 502 U.S. 942, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991); *United States v. Diaz*, 922 F.2d 998, 1006–07 (2d Cir.1990) ("new" evidence must create "a reasonable doubt that did not otherwise exist"), *cert. denied*, 500 U.S. 925, 111 S.Ct. 2035, 114 L.Ed.2d 119 (1991); *United States v. Tutino*, 883 F.2d 1125, 1140 (2d Cir.1989), *cert. denied*, 493 U.S. 1081 & 1082, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *DiPaolo*, 835 F.2d at 49; *United States v. Gilbert*, 668 F.2d 94, 96 (2d Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982); *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir.1980); *United States v. Castano*, 756 F.Supp. 820, 823 (S.D.N.Y.1991).

■ Thus where a defendant had before the trial the very information he claims is new evidence, he is not entitled to a new trial. *See United States v. Slutsky*, 514 F.2d 1222, 1225 (2d Cir.1975). Yu must demonstrate that the "new" evidence could not have been discovered through due diligence before or during the trial. *United States v. Siddiqi*, 959 F.2d 1167, 1173 (2d Cir.1992).

■ The "new evidence" offered by Yu, focusses on the prosecutor's admission that Wong's testimony would have added nothing new, that it would have been cumulative. The strongest case that Yu can make is that the conviction was based on an impermissible inference that Wong would have provided a stronger link between the heroin and Yu. But the sufficiency of the evidence in the absence of Wong's testimony has been tested at four points in the life of this case: in the denial of two Rule 29 motions by the jury in convicting Yu on the Texaco count and by the Court of Appeals in affirming the conviction. Confirmation that Wong has nothing more to offer does not effect the strength of the underlying factual record. Furthermore, there is no assertion that Wong would testify or what he would be likely to say that would address the connection between Yu and the heroin seized at the Texaco station.

This new evidence also fails to meet the requirements for invoking the exception on several fronts.

■ First, the potential testimony is not "newly discovered." A number of courts have held that the testimony of a co-defendant who chose not to testify at the trial or who previously asserted his right against self-incrimination is not newly discovered evidence. *United States v. Persinger*, 587 F.Supp. 899, 901 (W.D.Pa.1984); *see, e.g., United States v. Jacobs*, 475 F.2d 270, 286 (2d Cir.), *cert. denied sub nom., Lavelle v. United States*, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973); *Castano*, 756 F.Supp. at 823 (citing cases).

■ At the time of trial, Yu knew that Wong was an alleged co-conspirator. Thus, Yu knew that he may have "possessed relevant information which could exonerate him" if he might have testified that he did not deliver the heroin seized by the DEA agent at the Texaco station or perhaps that Yu had not supplied the heroin. *See Castano*, 756 F.Supp. at 823. Given the circumstances, the potential testimony of Wong "can at best be characterized as 'newly available,' which is not 'synonymous with newly discovered evidence on a Rule 33 motion.'" *Id.* at 823–24 (quoting *United States v. DiBernardo*, 880 F.2d 1216, 1225 (11th Cir.1989)).

■ Concededly, Yu did not know exactly what Wong would say on the stand. Nevertheless, as the Court of Appeals for the Fifth Circuit has written:

> The precise testimony of any potential witness cannot be known until it is had.... The decision not to interview [the witnesses], and not to call either witness, whether wise or not, was a deliberate and strategic one. The defendant is not entitled to a new trial so that he may employ a different strategy. Because the proffered testimony was readily available at the time of trial, there is no newly discovered evidence within the meaning of Rule 33.

*United States v. Beasley*, 582 F.2d 337, 339 (5th Cir.1978); *see also United States ex rel. Regina v. LaVallee*, 504 F.2d 580, 583 (2d Cir.1974) (defendant may not obtain new trial on basis of "new evidence" in form of testimony of witness available but not called at trial), *cert. denied*, 420 U.S. 947, 95 S.Ct. 1330, 43 L.Ed.2d 425 (1975).

For these reasons, Wong's testimony or the admission that it would not strengthen the nexus between Yu and the Texaco heroin, which Yu claims would have cleared the record that there was no connection between Yu and the heroin cannot be considered newly discovered evidence simply because Yu chose not to call Wong because he "didn't know what he would say."

Moreover, Yu has failed to establish that he could not with due diligence have discovered this evidence prior to trial. In light of this Court's denial of a missing witness charge on the grounds that efforts had not been made to subpoena Wong, and the Court of Appeal's affirmance of same, Yu has produced no evidence of any attempts to subpoena Wong before or during trial, *see United States v. Cruz*, 602 F.Supp. 825, 833 (S.D.N.Y.1985), or to request that the Government grant them immunity. *Castano*, 756 F.Supp. at 824 (*citing Cruz*, 602 F.Supp. at 830); *United States v. La Duca*, 447 F.Supp. 779, 786–88 (D.N.J.), *aff'd*, 587 F.2d 144 (3d Cir.1978), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979).

Finally, contrary to his claim that the fact that Wong could not add anything to the case, supports Yu's theory of no nexus, it simply adds nothing to the record. Between Davies' testimony and that of agent Nargas, it is possible that the jury could have found conspirator liability on the part of Yu for the sale at the Texaco station. The charge allowing such a finding was given.

It is not clear that the absence of a more concrete connection by Wong would "probably lead to acquittal." The potential testimony of Wong or a stipulation that Wong presents no stronger testimony on the nexus between Yu and the Texaco heroin, does not compromise the evidence adduced at trial: that DEA agents arrested Wong at the Texaco station contemporaneous with the seizure of narcotics; that the agent testified that Wong had gone into the car where the bag was; that Davies had picked up heroin from Yu and delivered it to Wong; and that Yu

may have told Wong that the defendant was the potential source of the heroin. Yu maintains, nevertheless, that the fact of the government's admission that Wong would have added nothing more undermines the jury's crucial inference from the Davies Yu testimony, that the heroin given from the defendant to Davies Yu and from Davies Yu to Wong was the same heroin involved at the Texaco gas station. While the connection may be tangential and based on inference, the jury found it sufficient to link Yu to the Texaco count through his co-conspirator liability. It is not logical, however, that the additional fact that Wong could not have added more, would create the necessary element that this fact would "probably" lead to acquittal.

The Government did not rest its case on the fact that Wong knew who the original supplier of the heroin was. It is not critical to the Government's case that Wong could not identify the heroin at the Texaco station as Yu's. It appears from the extradition affidavit that Wong might state definitively that the heroin involved at the Texaco station was that which he had obtained from Davies. Since Yu has no case stronger than the Government's statement that Wong's testimony was unnecessary and cumulative, the petition must be dismissed.

### Conclusion

For the foregoing reasons, Yu's motion for a new trial is denied.

It is so ordered.