**UNITED STATES of America, Plaintiff,**

v.

**Gustavo MIRANDA, Defendant.**

No. CR–96–211.

United States District Court,
E.D. New York.

Dec. 3, 1996.

Richard T. Faughnan, Assistant U.S. Attorney, Brooklyn, NY, for plaintiff.

Kenneth D. Wasserman, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The defendant was indicted, together with Hector Gonzalez and Carlos Pelaez, charged with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and with the substantive offense of knowingly and intentionally distributing and possessing with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Gonzalez pleaded guilty to the conspiracy count on April 30, 1996. Pelaez pleaded guilty to that count on May 21, 1996.

Miranda elected to put the government to its proof and was tried to a jury on June 17–18, 1996. He was convicted on both counts and is awaiting sentencing. In the interim, he has filed a motion pursuant to Rule 33, Fed.R.Cr.P., based on newly discovered evidence which consist of affidavits by Gonzalez and Pelaez that Miranda is innocent. They claim that Miranda had no knowledge of the substance of the events that led to his arrest. The affidavit of Gonzalez asserts Special Agent Robert Devine testified falsely when he stated at trial that "cocaine has a very strong odor ... the higher the amount, the stronger the odor would be." Gonzalez' affidavit also asserts that he informed federal agents at the time of his arrest that Miranda knew nothing of what was occurring and merely gave Gonzalez a ride in the vehicle in which the drugs were being transported. Pelaez, in his affidavit, states that he was expecting to meet only Gonzalez in connection with the drug transaction, that he had a description of him and imparted that information to the federal agents at the time of his arrest. Miranda claims that the material provided by the government pursuant to 18 U.S.C. § 3500 reflected neither the Pelaez nor the Gonzalez statements and that the government, therefore, violated the obligation imposed upon it by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d

215 (1963). Based upon those assertions he seeks an order granting a new trial or, at the very least, a hearing on the issues he raises.

By way of background, the defendants were arrested on February 13, 1996 charged with trafficking in approximately 40 kilograms of cocaine. The arrests followed information obtained by the government that a money-laundering operation was being conducted at Miranda's residence and it was placed under surveillance. Miranda was observed entering a van registered to him at the residence address and driving in a surveillance conscious manner to the Bayside, Queens residence of Gonzalez. Miranda entered and remained at the Gonzalez residence for 30–40 minutes, emerging to place a box in his van and returning to that residence. He and Gonzalez emerged shortly thereafter. Gonzalez was carrying a heavy duffel bag which he placed in Miranda's van and the two drove to 35th Avenue and 90th Street in Jackson Heights, Queens where Miranda parked his van. Gonzalez left the van and was met by Pelaez to whom the duffel bag was given after a brief conversation among the three. Pelaez was arrested nearby and a search of the duffel bag revealed several bricks of cocaine. Miranda and Gonzalez were then also arrested. A search of the Bayside residence of Gonzalez yielded an additional 25 kilograms of cocaine. The foregoing is a synopsis of the evidence adduced at trial. In addition to the testimony eliciting those facts was the testimony of an expert witness, Special Agent Devine, which was alluded to above and which forms one of the bases for this motion. The evidence also included the testimony of Detective Pellegrino that in an undercover capacity, he met on several occasions with the defendant Miranda in Ohio and discussed with him the purchase of cocaine from his New York supplier.

## DISCUSSION

█ Motions for a new trial based on newly discovered evidence are not favored in this Circuit and are to be granted only with great caution and in the most extraordinary circumstances. *United States v. DiPaolo,* 835 F.2d 46, 49 (2d Cir.1987). To succeed on such a motion a defendant must show, among other things, (1) that the evidence was discovered after trial, (2) that it could not, with the exercise of diligence have been discovered sooner, and (3) that it is so material that it would probably have produced a different verdict. *United States v. Slutsky,* 514 F.2d 1222, 1225 (2d Cir.1975). The burden of establishing those factors must be borne by the defendant. *United States v. Schwartzbaum,* 527 F.2d 249, 254 (2d Cir.1975), *cert. denied,* 424 U.S. 942, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976).

### A. The Gonzalez and Pelaez Affidavits:

█ Affidavits such as those ostensibly prepared by co-defendants Gonzalez and Pelaez submitted as a basis for granting a Rule 33 motion are not new to federal courts. A case cited frequently in this regard is *United States v. Jacobs,* 475 F.2d 270, 286, n. 33 (2d Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 116, 131, 38 L.Ed.2d 53 (1973) in which a similar affidavit was rejected by the district court as warranting a new trial and in affirming that determination Judge Friendly wrote "a court must exercise great caution in considering evidence to be 'newly discovered' when it existed all along and was unavailable only because a co-defendant, since convicted, had availed himself of his privilege not to testify." *See also Meadows v. Delo,* 99 F.3d 280 (8th Cir.1996); *United States v. Mosby,* 12 F.3d 137 (8th Cir.1993); *United States v. Dale,* 991 F.2d 819 (D.C.Cir.), *cert. denied,* 510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993); *United States v. Lockett,* 919 F.2d 585 (9th Cir.1990); *United States v. Metz,* 652 F.2d 478 (5th Cir.1981) (exculpatory affidavit of convicted co-conspirator not newly discovered evidence); *United States v. Diggs,* 649 F.2d 731 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981); *Coplin v. United States,* 88 F.2d 652, 665 (9th Cir.), *cert. denied,* 301 U.S. 703, 57 S.Ct. 929, 81 L.Ed. 1357 (1937); *United States v. Yu,* 902 F.Supp. 464 (S.D.N.Y.), *aff'd,* 101 F.3d 1393 (2d Cir.1996); *United States v. Flynn,* 791 F.Supp. 133 (M.D.N.C.1992) (statements of co-defendants exculpating defendant are, at best, newly available, not newly discovered); *United States v. Castano,* 756 F.Supp. 820 (S.D.N.Y.1991); *United States v. La*

*Duca,* 447 F.Supp. 779, 783 (D.N.J.1978) ("The court cannot be blind to the real possibility that the defendant who stood trial did not genuinely desire that his pleading co-defendant testify at that trial, and thus that the new evidence is not worthy of belief.")

In addition to the aforementioned judicial determinations that the proffered affidavits are not "newly discovered" evidence, the defendant has failed to sustain his burden that they are. Indeed, that they are not is convincingly demonstrated by the defendant's own affidavit dated September 20, 1996 in paragraph 7 of which he states: "The defendant further contends that but for the defense counsel's unprofessional conduct, he failed to call to stand codefendants to testify at trial in defendant's behalf. Defendant contends that result of trial would have been totally different."

### B. *The Testimony of Agent Devine*

 The defendant's assertion that Agent Devine testified falsely when he said that cocaine emitted an odor is based upon co-defendant Gonzalez' affidavit that he did and upon submission at oral argument of page 158 of volume 15 of *Analytical Proffers of Drug Substances* edited by Klaus Florey, to the effect that cocaine is odorless. (Court's Exhibit A). For the reasons already given, Gonzalez' affidavit is entitled to no credence. The excerpt from the treatise is not persuasive absent a comparison of the substance referred to there and the substance seized from the defendants here. The questionable validity of both the Gonzalez affidavit and the treatise excerpt is convincingly demonstrated by a reference to merely a few of the literally countless cases which belie them. For example in *United States v. Henry,* 47 F.3d 17, 19 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2263, 132 L.Ed.2d 268 (1995), the defendant was convicted of conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841, 846. The opinion recites that couriers flew to Antigua and there strapped two prewrapped, sealed packages to their bodies, *"masking the odor of cocaine with perfume."* (Emphasis added). In *United States v. Marin,* 669 F.2d 73, 79 (2d Cir.1982), the defen-

dants were convicted of conspiracy to possess cocaine with intent to distribute it and for possession of cocaine with intent to distribute it. The opinion described the opening of a bag by a DEA agent who saw in it "two large packages that were sealed with masking tape *and exuded an odor of cocaine."* (Emphasis added). *See also, e.g., United States v. Benevento,* 836 F.2d 60, 64 (2d Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988); *United States v. Taborda,* 635 F.2d 131, 134 (2d Cir.1980). The cases are legion in which drug detecting dogs have sniffed out cocaine. *See, e.g., United States v. Eltayib,* 88 F.3d 157, 164 (2d Cir. 1996). It is remarkable to assume that given the plethora of cases in which the odor of cocaine was a factor, it wasn't until a convicted drug trafficker submitted a belated affidavit that it was odorless that a question about it is raised. The abundance of cases to the contrary suggest, rather, that Agent Devine's testimony was not perjurious. He was qualified as an expert witness at trial and his testimony was not disputed. The jury was, in addition, instructed that his testimony should be evaluated as the testimony of any other witness would. Given the totality of all the evidence adduced at trial, even had the testimony of Agent Devine been disputed, it was not so material that it would have affected the outcome of the trial. Far more damning was the length of time the defendant spent with Gonzalez at the latter's home in which 25 kilograms of cocaine was found; his false statement when arrested that he picked up Gonzalez on a street corner; the conversation Pelaez was seen to have with the defendant and Gonzalez before leaving with the duffel bag filled with cocaine, and his prior involvement with cocaine as testified to by Detective Pellegrino.

### C. *The Brady Claims*

 The claimed violation of the government's *Brady* obligation is predicated upon Pelaez' belated affidavit that he gave the arresting agent a description of the person he was to meet which did not fit the description of Miranda. His affidavit also affirmatively avers that the defendant was not involved and knew nothing about what he and Gonzalez were up to on the day of their

arrest. The suspect nature of the Pelaez affidavit is heightened by a comparison of that document and the post arrest statement given to the arresting officer and made available to the defendant. *See* 3500, A–4. In that statement he said that he was instructed to meet a van at a designated location and pick up a bag to be delivered to a person waiting in the lobby of a nearby apartment house. Most significant, however, was his statement that he did not know nor had he ever before met the *individuals* from whom he obtained the bag at the van.

It is important to know that Pelaez was arrested immediately after leaving the van and just outside the apartment house at which he was to deliver the bag. His sworn statement that this defendant whom he had never met before, knew nothing about the transpiring events, is, therefore, patently incredible. It is also important to note that the government was first informed of statements Pelaez allegedly made to the arresting agent which he claims are not reflected in the agent's report upon receiving his affidavit. Even if the maxim *falsus in uno falsus in omnibus* were not invoked, the statements he allegedly made were neither exculpatory nor material in that it would have produced a different verdict.

■ For all of the foregoing reasons, the motion is denied as is the defendant's request for an evidentiary hearing. A motion for a new trial may be decided upon affidavits without evidentiary hearings. *United States v. Metz,* 652 F.2d at 481.

SO ORDERED.