UNITED STATES of America,

v.

Nat SCHLESINGER, also known as "Naftule Schlesinger" and "Zvi Pollack," Herman Niederman, and Goodmark Industries, Inc., Defendants.

Criminal No. 02–485 (ADS)(ARL).

United States District Court,
E.D. New York.

July 26, 2006.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York by Lawrence Philip Ferazani, Cynthia M. Monaco, Richard Lunger, Assistant U.S. Attorneys, Central Islip, NY, for U.S.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP by Herald Price Fahringer, Esq., Jeremy L. Gutman, Esq., New York City, for Defendants Nat Schlesinger and Goodmark Industries, Inc.

Michael L. Soshnick, Esq., Adrian L. Diluzio, Esq., Mineola, NY, for Defendant Nat Schlesinger.

### *ORDER*

SPATT, District Judge.

Presently before the Court is a third motion by defendants Nat Schlesinger and Goodmark Industries, Inc., (the "Defendants"), for a new trial based on newly discovered evidence. In particular, the Defendants allege that the government assisted a trial witness, Bradley Lanes, in his efforts to obtain benefits in connection with his sentencing and has otherwise afforded him undisclosed preferential treatment in exchange for his testimony against Nat Schlesinger. The undisclosed beneficial treatment alleged to have been provided by the government includes: (1) consenting to the request by Lanes to transfer his case to this Court for sentencing, (2) consenting to adjournments of his sentencing to a date after the scheduled sentencing of Schlesinger; and (3) refraining from seeking a revocation of bail or alteration of the conditions of bail after Lane committed a post-release crime.

■ It has long been the law that the government has a duty to disclose evidence favorable to the accused when it is material to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This duty under *Brady* to disclose is not limited to "exculpatory" information, but it also includes information that could be used to impeach government witnesses, so-called Giglio material. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

The Supreme Court recently provided a clear summary of the rules governing an alleged *Brady* violation:

A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused. This ... Brady duty extends to impeachment evidence as well as exculpatory evidence, and Brady suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor. Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*Youngblood v. West Virginia*, —— U.S. ——, ——, 126 S.Ct. 2188, 2190, 165

L.Ed.2d 269, —— (2006) (citations and quotations omitted).

Stated succinctly, the Second Circuit has recently held that a Brady violation has three components: "The material evidence 'must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued.'" *United States v. Madori*, 419 F.3d 159, 169 (2d Cir.2005) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)); *see also United States v. Rivas*, 377 F.3d 195, 199 (2d Cir.2004).

■ Information is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." *Id.* (citations omitted); *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (holding that the state's obligation under Brady turns on the "cumulative effect of all such evidence suppressed by the government"); *Madori*, 419 F.3d at 169 ("Impeachment evidence is evidence 'having the potential to alter the jury's assessment of the credibility of a significant prosecution witness."); *see also United States v. Avellino*, 136 F.3d 249, 255 (2d Cir.1998); *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir.1995).

■ Here, the Court need not determine whether the government actually failed to disclose the potential impeachment evidence because such information would not have been material to the verdict. Along with numerous other witnesses,

Lanes testified at the trial regarding the insurance fraud. Lanes stated that he was an insurance adjuster, and that he received more than $35,000 in cash bribes from Schlesinger in exchange for fraudulently inflating insurance claims for three fires that occurred in 1987, 1990, and 1991 at the Wallabout Street factory. This testimony was substantially corroborated by five other witnesses, namely, Seymour Berson, Joseph Panico, Jeffrey L. Fougere, Thomas Tesoriero, and John Cronin.

In addition, the credibility of Lanes was fully explored at the trial. Lanes testified that in the 1990's he plead guilty to federal charges of mail fraud, tax evasion, and conspiracy. He understood when he plead guilty that he was subject to more than ten years imprisonment and a $250,000 fine. Lanes explained that he then entered into a cooperation agreement with the government, but that in 2004 he was notified by the government that he had breached the agreement by being arrested and charged by the Broward County Sheriff's Office with possession of cocaine and tampering with evidence, and by falsely reporting to the government that he had not used cocaine. Due to the breach of the cooperation agreement, he understood that he would no longer be eligible for a 5K letter.

The testimony also established that, although Lanes breached his cooperation agreement, he nonetheless provided voluntary assistance to the government in testifying against Schlesinger. When asked by the prosecutor, "Do you believe that testifying here today, even without a cooperation agreement, will help you in some fashion when you are sentenced?" Lanes replied, "I don't know. I've been cooperating with the government for nine years right now, and I'm not about to give up over a mistake I made." Trial Tr. at 425.

The Court finds that the mass of evidence against Schlesinger with regard to the insurance fraud, along with the substantial impeachment information disclosed to the jury as to Lanes, renders immaterial any alleged undisclosed beneficial treatment by the government. With reasonable certainty, such impeachment information, if proven, would have no affect on the outcome of the verdict, or in the assessment by the jury of the credibility of Lanes.

■ Moreover, the three items of alleged "new evidence" of secret preferential treatment are speculative and, in any event, without *Brady* merit. First, it was counsel for Lanes who; while aptly advancing the interests of his client, filed a motion requesting that his case be transferred to this Court for sentencing due to the Court's familiarity with his client's background. The letter filed by Lanes indicates that the government's consent was obtained for the motion, but the Court notes that such consent was not required to transfer the case to another judge in the Eastern District. *See* Rule 50.3(c) of the Guidelines for the Div. of Bus. Among Dist. Court Judges in the Eastern Dist.

■ Second, the adjournment of his sentence—a routine application often sought by unincarcerated defendants—was requested by Lanes, who resides in Florida, because he was unable to purchase an inexpensive flight to New York and bring his father with him for emotional support. A scheduling request of this nature is generally granted by the Court. Contrary to the Defendants suggestion, the rescheduled date of August 4, 2006, had nothing to do with the date scheduled for the sentencing of Schlesinger. Indeed, the timing of Lanes' sentencing is totally irrelevant to the Defendants' instant motion. Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, the Defendants can file a motion for a new trial based on newly discovered evidence within 3 years after the verdict or finding of guilty. *See* Fed. R.Crim.P. 33(b)(1).

Finally, the Defendants claim that they have recently discovered that the government did not seek a revocation or alteration of Lanes' bail when he was arrested on drug charges simply ignores the testimony Lanes provided at the trial in this case. The Defendants and the jury were fully aware at the trial that Lanes had been arrested and charged with possession of cocaine while he was out on bail, and that as a result of such post-release offense, his cooperation agreement was terminated. Therefore, any allegation that the government failed to disclose such information is completely unfounded.

Accordingly, the motion for a new trial is DENIED, in all respects.

**SO ORDERED.**