11-3680-cr(L)
*United States v. Fuentes, et ano.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6th day of November, two thousand twelve.

PRESENT:

> PIERRE N. LEVAL,
> JOSÉ A. CABRANES,
> ROBERT D. SACK,
> > *Circuit Judges.*

---

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                      Nos. 11-3680-cr(L); 11-4136-cr(CON)

OSCAR FUENTES, JULIO CHAVEZ, AKA FLECHA, AKA FLECHITA,

*Defendants-Appellants.*

---

**FOR DEFENDANTS-APPELLANTS:**        Michael Hurwitz and Miriam L. Hurwitz, Hurwitz, Stampur & Roth, New York, NY, *for* Oscar Fuentes.

SAM A. SCHMIDT, Law Offices of Sam A. Schmidt (Jill R. Shellow, Law Offices of Jill R.

Shellow, *on the brief*), New York, NY, *for* Julio Chavez.

FOR APPELLEE:                          JASON A. JONES (Peter A. Norling, *on the brief*) *for* Loretta E. Lynch, United States Attorney, United States Attorney's Office for the Eastern District of New York, Brooklyn, NY.

Appeals from judgments of the United States District Court for the Eastern District of New York (Sandra L. Townes, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of conviction entered on September 7, 2011 and September 30, 2011 are **AFFIRMED**.

Defendants-Appellants Oscar Fuentes and Julio Chavez appeal from September 7, 2011 (Fuentes) and September 30, 2011 (Chavez) judgments of the District Court convicting them of murder in-aid-of-racketeering and discharging a firearm in relation to a crime of violence under 18 U.S.C. §§ 1959(a)(1) and 924(c)(1)(a), respectively.[1]  We assume the parties' familiarity with the background of the case, which we reference only as necessary to explain our decision to affirm.

On appeal, Chavez argues that the government improperly suppressed information about inconsistencies between the eyewitness's testimony at trial and the eyewitness's prior descriptions of the perpetrators.  Fuentes asserts that the District Court erred by admitting statements made during his confession relating to other and uncharged crimes.

## BACKGROUND

Fuentes and Chavez were members of an international street gang known as La Mara Salvatrucha ("MS-13").  On the night of May 17, 2007, several MS-13 members drove around Queens, New York looking for rival gang members to kill.  While in the vehicle, the MS-13 members saw two young men, Maurice Parker and Wilson Gonzalez, standing in front of a deli.  One of the individuals was wearing red, a color signifying membership in a rival gang.  Two MS-13 members exited the car and murdered Parker; Gonzalez escaped.

Several hours later, police officers interviewed Gonzalez about the shooting.  Gonzalez stated that two Hispanic males approached him and Parker.  He described the one who pulled the

---

[1] Fuentes was also convicted of possessing a firearm with a removed serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(D).

2

gun out of his waistband as having light skin and "light colored curly hair." He described the other as "brown skinned," having "black hair," and "wearing dark clothing."

Months later, in November 2007, police showed Gonzalez two photographic arrays. One included a photograph of Chavez and the other one included a photograph of another MS-13 member, Alvaro Lopez. (The government's theory of the case was that Chavez and Lopez exited the car and Chavez shot Parker.)[2] Gonzalez did not select Chavez from the first array but stated that another individual had features similar to the "dark skinned Hispanic male" involved in the shooting. Gonzalez identified Lopez from the second array as "hav[ing] the same look and feature[s]" as the light-skinned male. The evidence from the photographic arrays and Gonzalez's statements to police immediately after the shooting were disclosed to defense counsel in letters dated May 31, 2009 and March 2, 2010, respectively.

At trial, which began before Judge Townes on March 1, 2011, Gonzalez testified that he only got "a quick glimpse" of the perpetrators and "just kept running." He noted, however, that he did remember telling officers that the two perpetrators were clean shaven. He also stated that he did not know which individual was the shooter, but he did see both men get into a silver SUV after the shooting. Three cooperating witnesses also testified that Chavez shot Parker.

The jury returned a verdict of guilty on all counts against Chavez and Fuentes on March 14, 2011. More than two months later, Chavez filed a motion for a new trial pursuant to Rule 33. He argued that Gonzalez's trial testimony was inconsistent with, and undercut, Gonzalez's prior statements about the perpetrators' identities, and thus, the substance of his projected testimony should have been disclosed prior to trial under *Brady v. Maryland*, 373 U.S. 83 (1963).[3] The District Court denied the motion on September 6, 2011. Fuentes did not file a Rule 33 motion but adopts Chavez's *Brady* arguments on appeal. In addition, Fuentes argues that the District Court erred by admitting statements he made during his confession about other and uncharged crimes.

**DISCUSSION**

**A. No *Brady* Violation Occurred**

Chavez argues that the District Court abused its discretion in denying his motion for a new trial based on the inconsistencies in Gonzalez's statements before and during trial. *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) ("A court of appeals reviews a district court's denial of a motion for a new trial under Rule 33 for abuse of discretion."). He asserts that if he had known that

---

[2] Fuentes was the driver of the car and confessed involvement in the shooting.

[3] Even though Chavez argues that the government violated *Brady*, it is unclear from the record that the government knew what Gonzalez would say before he testified.

Gonzalez's statements at trial would undermine his earlier statements regarding the perpetrators' identities, then he would have "prepare[d] exhibits, including photographs, maps and diagrams to scale, to demonstrate the impossibility of Mr. Gonzalez's new claims" and to bolster the accuracy of the prior statements. This argument is without merit for at least a few reasons.

First, Gonzalez's trial testimony cannot be considered "newly discovered evidence" merely because it came out during trial. *See United States v. Zagari*, 111 F.3d 307, 322 (2d Cir. 1997) (stating that evidence is "new" only if "it could not have been discovered, exercising due diligence, before or during trial"). While it is unclear whether defense counsel could have obtained this information before trial through its own investigation,[4] we note that Gonzalez's testimony was not so surprising to cause Chavez to object at trial or seek a continuance. *See, e.g.*, *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991) ("If Harris were truly surprised by the testimony, he could have sought time to prepare his cross examination and/or answering case."). Moreover, it appears that other disclosures put defense counsel on notice about potential inconsistencies between Gonzalez's descriptions of the perpetrators over time.[5]

Moreover, although Chavez argues he could not adequately respond to Gonzalez's allegedly inconsistent testimony, Chavez was able to use the disclosed 2007 statements to impeach Gonzalez's trial testimony on cross-examination. App'x 243. Because the jury was able to consider the consistency and implications of Gonzalez's 2007 statements and his trial statements in 2011 describing the perpetrators, and because other substantial evidence known to defense counsel prior to trial (and presented at trial) implicated Chavez, he cannot show that Gonzalez's disputed trial testimony was "material" within the meaning of *Brady* in that it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

## B. Fuentes's Statements About Other and Uncharged Crimes Were Properly Admitted

Fuentes argues on appeal that certain statements made during his confession—namely, evidence of other and uncharged crimes—should have been excluded as unduly prejudicial under

---

[4] Chavez argues that the government improperly suppressed the identity and contact information for Gonzalez. We disagree. A week before trial (and two weeks before he testified), the Government disclosed to defense counsel Gonzalez's name and other information that would help to locate him, such as his neighborhood, his father's name, and a barber shop where he would have been known. Given the violent nature of the offense, the District Court was well within its discretion in denying Chavez's earlier motion to compel information about Gonzalez. *See United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975).

[5] The government sent defense counsel a letter dated December 6, 2010 stating that Gonzalez "attended a court date in this case . . . and that he saw defendant Julio Chavez. [Gonzalez] further advised . . . that defendant Chavez looks like the individual who shot Maurice Parker." App'x 84. In a subsequent email exchange, the government informed defense counsel that "[i]f you intend to go into the November 2007 identifications [where Gonzales failed to select Chavez out of a photographic array], then yes, I intend to offer his more recent identification [for impeachment purposes] . . . . If you do not intend to go into the issue, then no, I do not intend to offer any identification by [Gonzalez]." App'x 89.

Federal Rule of Evidence 403. We review a district court's decision to admit or preclude evidence for "abuse of discretion." *See Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 16 (2d Cir. 1996); *cf. In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (internal quotation marks, citations, and modifications omitted)).

We have stated that in prosecuting racketeering offenses, "the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise." *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003); *see also United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) ("[U]ncharged acts may be admissible as direct evidence of the conspiracy itself." (quoting *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994))). On the record before us, we cannot conclude that the District Court erred or abused its discretion by admitting this evidence.

## CONCLUSION

We have considered all of the arguments of Chavez and Fuentes on appeal and find them to be without merit. For the reasons stated above, we **AFFIRM** the judgments of September 7, 2011 and September 30, 2011.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk